**DART TRANSIT CO. v. INTERSTATE COMMERCE COMMISSION et al.**

Civ. A. No. 4288.

United States District Court
D. Minnesota, Fourth Division.

March 20, 1953.

Lee Loevinger, Minneapolis, Minn. (Larson, Loevinger, Lindquist, Freeman & Fraser, Minneapolis, Minn., on the brief), for plaintiff.

C. H. Johns, Asst. Chief Counsel, Interstate Commerce Commission, Washington, D. C. (Edward M. Reidy, Chief Counsel, Interstate Commerce Commission, Washington, D. C., on the brief), for defendant Interstate Commerce Commission.

Philip L. Roache, Jr., Sp. Asst. to the Atty. Gen., and Philip Neville, U. S. Atty., St. Paul, Minn. (James E. Kilday, Sp. Asst. to the Atty. Gen., and Edward P. Hodges, Acting Asst. Atty. Gen., on the brief), for defendant United States.

David Axelrod, Axelrod, Goodman & Steiner, Chicago, Ill., for Intervener.

Before SANBORN, Circuit Judge, NORDBYE, Chief District Judge, and BELL, District Judge.

SANBORN, Circuit Judge.

This action is the outgrowth of a chronic controversy between Dart Transit Company (hereinafter called Dart), a contract carrier by motor vehicle, and the Interstate Commerce Commission with respect to the commodity coverage of the permit issued by the Commission to Dart. Dart seeks to have set aside the report and order of Division 5 of the Commission entered May 26, 1952, in Docket No. MC–C–1185, Dart Transit Company—Investigation of Operations, 54 M.C.C. 429. In that proceeding, the Commission, after a hearing, determined that Dart had transported commodities not authorized by its permit, and entered a cease and desist order. The Commission in its report summarized its findings as follows (page 440 of 54 M.C.C.):

. "We find that respondent [Dart Transit Company], without appropriate authority from this Commission, has engaged in the transportation in interstate or foreign commerce, (1) of tin plate, wire can keys and solder; (2) of shelled Spanish peanuts; (3) of beer in cans, bottles, and kegs; (4) of frozen foods; (5) of meat and packing-house products from Faribault, Minn.; (6) of cleansers, and (7) of empty glass bottles, jars, empty paper containers, paper products, and wooden boxes, in the manner and to the extent set forth above.

"An order will be entered requiring respondent to cease and desist and hereafter to abstain from all operations in interstate or foreign commerce of the character found in this report to be unlawful."

Dart asserts that the order of the Commission is invalid because the Commission failed adequately to notify Dart of the issues to be considered at the hearing, denied Dart a full and fair hearing, and made findings which were not warranted by the evidence or the law.

Most of the evidentiary facts are not in dispute. Dart had acquired from a predecessor "grandfather" rights, under § 209(a) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 309(a), to transport, as a contract carrier over irregular routes, certain commodities between specified points. The Commission on February 7, 1942, issued to Dart a permit which described the commodities that Dart was authorized to transport, as follows: (1) "Packing house and dairy products, equipment, material, and supplies"; (2) "Dairy products, equipment, supplies, and material"; (3) "Canned goods and canning factory supplies."

Dart, as shown by its own records, which were introduced in evidence, had transported shipments which the Commission ruled were of a character excluded from the coverage of Dart's permit.

The Commission in August, 1949, had considered a petition of Dart in Docket No. MC–77055 for a clarification or modification of its permit. Dart Transit Company —Modification of Permit, 49 M.C.C. 607. In that petition Dart sought unrestricted authority to transport general commodities

to and from all points specified in its permit. The Commission ruled that Dart did not have, and was not entitled to have, authority for the unrestricted transportation of general commodities (pages 609–610 of 49 M.C.C.), but that that did not mean that under Dart's permit it was limited with respect to the type of persons for whom it might transport the commodities specified in its permit. The Commission said with respect to the commodity description of the permit (page 611 of 49 M.C.C.):

> " * * * A particular item as, for example, sawdust or cotton duck when moving to a packing house or dairy is readily classified as a packing-house or dairy supply, but the same commodity may also be used by others in wholly different businesses. Obviously, sawdust is not a packing-house supply when consigned, for example, to a briquet manufacturer or fuel dealer, nor would cotton duck be a packing-house supply when moving to a tent or awning manufacturer. In order for sawdust or cotton duck to be a packing-house or dairy material or supply, they must be earmarked or intended at the time for use in a packing house or dairy. Thus, almost without exception packing-house supplies, et cetera, would move only to or from packing houses or to or from dealers in packing house supplies, et cetera, and any movement of a commodity which might be a packing-house commodity, to or from any other type of shipper would normally appear to be outside petitioner's authority in the absence of special or unusual circumstances."

The Commission's construction of the authority of Dart, in Docket No. MC–77055, was not acceptable to, nor accepted by Dart.

On April 27, 1950, the District Director of the Bureau of Motor Carriers of the Interstate Commerce Commission, at its Minneapolis office, wrote a letter to Dart stating, among other things, that Dart was misinterpreting its operating authority and that it could not continue to transport commodities of the character included in some shipments which it had theretofore carried. The Director specified seven types of commodities which he asserted were beyond Dart's authority to transport.

Counsel for Dart on May 15, 1950, replied at length to the letter of the Director. In this reply counsel referred specifically to, and discussed in detail, each of the seven types of shipment which the Director had challenged, namely: (1) shipments of tin plate from Gary, Indiana, to the American Can Company (a manufacturer of cans) in St. Paul, Minnesota; (2) shipments of boxes, cartons, etc., for Waldorf Paper Products Company; (3) shipments of canned and bottled beer for the Hamm Brewing Company; (4) shipments of glass bottles for the Toni Company; (5) shipments of cleanser for the Royal Lemon Company in Minneapolis; (6) shipments of frozen eggs in cans; (7) shipments of cases or cartons from Flour City Box Company to Pepsi Cola Bottling Company.

In his letter counsel for Dart stated that it claimed the right to transport, and would continue to transport, the classes of commodities referred to, "unless and until it is prevented from doing so by legal action." The last paragraph of counsel's letter of May 15, 1950, to the Director reads as follows:

> "However, compliance with your letter of April 27 would involve such a substantial loss of business for Dart that it is doubtful it could continue to remain in business. Since it has already at your insistence filed one petition for interpretation of its permit with the Commission, and since the decision of that matter took more than two years and apparently did not result in any substantial clarification so far as the permit was concerned, Dart does not feel that there is anything to be gained by further application to the Commission for additional interpretation. It is therefore suggested that on the basis of the admissions made in this letter, which will be stipulated to by Dart, you or the appropriate repre-

sentative of the Commission take such legal action as will raise the issue of the propriety of Dart operations so that we may within a reasonably short time have some relatively final determination of the scope of Dart's authority."

Apparently Division 5 of the Interstate Commerce Commission accepted the suggestion of Dart's counsel, for, by an order of August 4, 1950, an investigation into Dart's operations was instituted. The order charged Dart with transporting "various commodities not within the scope of the commodity description * * *; including beer, in cans, in bottles, and in kegs; empty glass bottles for use in distributing soft drinks, beer, hair waving solutions, and shampoos; tin plate and sheet metal to a can manufacturer for use in manufacturing cans; paper containers and other paper products for use by manufacturers of or dealers in electric batteries, paints, beer, dry cleaning supplies, flour, soap, and petroleum products; and paper garment hangers."

The hearing before the Examiner designated by the Commission lasted a full day. Counsel for the Bureau of Motor Carriers introduced its evidence in the morning, and counsel for Dart had the afternoon and early evening to put in its case. Several interveners appeared, but took only a minor part in the proceeding. The Examiner, during the hearing, sought to prevent waste of time in the examination and cross-examination of witnesses with respect to their opinions or conclusions relating to issues which the Commission was capable of deciding and would ultimately have to decide. The Examiner, over the objection of Dart, refused to confine the evidence to shipments of commodities of the kinds specifically mentioned in the Commission's order instituting the investigation.

■ It is apparent that Dart is in no position to complain of any lack of notice. See and compare, New York Central & H. R. R. Co. v. Interstate Commerce Commission, C.C.S.D.N.Y., 168 F. 131, 138–139; National Labor Relations Board v. Piqua

Munising Wood Products Co., 6 Cir., 109 F.2d 552, 557; Mansfield Journal Co. v. Federal Communications Commission, 86 U.S.App.D.C. 102, 180 F.2d 28, 36; Cincinnati, Hamilton & Dayton Railway Co. v. Interstate Commerce Commission, 206 U.S. 142, 149–150, 27 S.Ct. 648, 51 L.Ed. 995; Chicago, St. Paul, Minneapolis & Omaha Railway Co. v. United States, 322 U.S. 1, 3–4, 64 S.Ct. 842, 88 L.Ed. 1093.

■ It is not enough to invalidate a hearing that the notice given to a litigant, who was already aware of the issues to be tried, did not contain a complete and precise bill of particulars.

■ We find nothing in the record which indicates to us that the hearing accorded Dart was not a full and fair hearing. Counsel for Dart called its witnesses, put in its evidence, and rested the case before the Examiner without requesting additional time or a further hearing. Counsel stated that he would like to file a brief, and was granted leave by the Examiner to do so. Counsel also stated that Dart would like to have the Examiner issue a proposed report. That was also agreed to. There is no adequate basis in the record for a ruling that Dart was denied due process in the proceedings before the Commission. See United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 529–530, 66 S.Ct. 687, 90 L.Ed. 821.

The Commission reached the conclusion (1) that shipments of tin plate, solder, and wire can keys delivered to a can manufacturer were not within the coverage of Dart's permit, even though the manufacturer used the materials for the making of cans for packing houses or canneries; (2) that shipments of shelled Spanish peanuts (which Dart's records showed it had transported, but which its president denied that it had transported) were unauthorized; (3) that the transportation of beer in cans, bottles, and kegs was not within the scope of Dart's authority, since the term "canned goods" as used by the Commission did not include canned beer or other materials which merely for convenient packaging were put in cans, and since carriers serving

breweries were customarily authorized to transport "malt beverages," while those serving canneries were authorized to transport "canned goods"; (4) that Dart had exceeded its authority in transporting certain glass bottles and jars for uses foreign to packing houses, dairies or canneries; (5) that frozen foods were not "canned goods" within the meaning of Dart's permit; (6) that loose meats and packing-house products shipped from a meat packer in Faribault, Minnesota, to itself in Chicago were not within the scope of Dart's permit; (7) that Dart exceeded its authority in transporting paper containers, paper products, cleanser, wooden boxes, and glass trays to or for persons not engaged in the packing house, dairy products, or canning business, it appearing that such commodities were not products of or intended for use in a packing house, dairy or cannery, and that, in order for Dart to stay within the scope of its authority, "such commodities must at the time of shipment definitely be intended for use by a packing house, dairy-products concern, or cannery."

It should be said that by a permit dated March 26, 1952, Dart was authorized by the Commission to transport glass containers and caps, covers and tops therefor, from Alton and Streator, Illinois, to all points in Minnesota. That authority is, however, not impaired or affected by the order of the Commission involved in the instant action.

It is our opinion that in an action such as this, a court may not substitute its judgment for that of the Commission with respect to the question of the scope or coverage of a permit which the Commission has issued to a motor carrier, if that question is at all doubtful. In Noble v. United States, 319 U.S. 88, 93, 63 S.Ct. 950, 952, 87 L.Ed. 1277, the Supreme Court said that "The precise delineation of an enterprise which seeks the protection of the 'grandfather' clause has been reserved for the Commission." By the same token, we think that within reasonable limits it is for the Commission to determine the scope of the "delineation." The meaning of words may be a question of law or a question of fact.

This was made plain in Great Northern Railway Co. v. Merchants Elevator Co., 259 U.S. 285, 291–296, 42 S.Ct. 477, 66 L. Ed. 943. See also, Standard Oil Co. (Indiana) v. United States, 283 U.S. 235, 238–240, 51 S.Ct. 429, 75 L.Ed. 999. Words may have one meaning when used in industry or in the regulation of industry and another meaning when used in common speech. We are not convinced that in the interpretation of Dart's permit the Commission misapplied the law or exceeded its jurisdiction. For instance, we are not prepared to say that as a matter of law the term "canned goods" as used in Dart's permit covered "canned beer" or every sort of canned materials. In the interest of uniformity in the regulation and policing of the motor carrier industry, it is of course essential that the Commission be subjected to as little judicial interference as the law will permit.

Some of the findings of the Commission in the instant case were, in our opinion, clearly right. We are not convinced that any finding of the Commission was clearly wrong. We think the inferences the Commission drew from the evidence were permissible. The evidence relative to Dart's shipments of commodities to or for corporations which were apparently not in any way engaged in the packing-house, dairy or canning industries was, we think, sufficiently persuasive to call for an explanation from Dart. For instance, one reasonably may believe that a "Biscuit Company" is not a packing-house, dairy or canning industry. In the absence of any explanation indicating that these questioned shipments were of commodities covered by Dart's permit, the Commission was, we think, warranted in inferring that Dart had exceeded its authority with respect to the transportation of such shipments.

But if it be assumed that some of the findings of the Commission were based upon a wrongful inference as to the nature of the business of a shipper for whom or to whom goods were transported, we would still be of the opinion that the order of the Commission directing Dart to abstain from

transporting commodities not authorized by its permit as construed by the Commission was a valid order.

We conclude that there was a sufficient factual and legal basis for the Commission's challenged order, that Dart was not denied due process of law in the proceedings before the Commission, and that the preliminary injunction heretofore entered in this action should be vacated and the complaint dismissed.

Judgment may be entered accordingly.