**FLOYD & BEASLEY TRANSFER COMPANY, Inc., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 1111.**

United States District Court
N. D. Alabama, E. D.

July 8, 1960.

Markstein & Cooper, Birmingham, Ala., and H. Charles Ephraim, Washington, D. C., for plaintiff.

William P. Rogers, Atty. Gen., James H. Durkin, Atty., Dept. of Justice, Washington, D. C., W. L. Longshore, U. S. Atty., and M. L. Tanner, Asst. U. S. Atty., Birmingham, Ala., and Robert W. Ginnane, Gen. Counsel, and B. Franklin Taylor, Jr., Associate Gen. Counsel, I. C. C., Washington, D. C., for defendants.

Calvin Poole, Poole & Poole, Greenville, Ala., Andrew W. Griffin, Birmingham, Ala., Allan Watkins, Watkins & Daniell, Atlanta, Ga., R. J. Reynolds, Jr., Reynolds, Holt & Reynolds, Atlanta, Ga., Wm. Bew White, Jr., White, Bradley, Arant, All & Rose, Birmingham, Ala., Maurice Bishop, Bishop & Morris, Birmingham, Ala., and Wrape & Hernly, Memphis, Tenn., for intervenors.

Before RIVES and TUTTLE, Circuit Judges, and LYNNE, District Judge.

LYNNE, District Judge.

Proceeding under 28 U.S.C.A. §§ 1336, 1398, 2284, 2321–2325, plaintiff [1] brought this action against the Interstate Commerce Commission and the United States [2] to set aside two orders of the Commission arising out of separate but interrelated proceedings. The order entered in the complaint proceeding [3] requires plaintiff to cease and desist from the performance of transportation found to be beyond the scope of plaintiff's existing authority to transport "textile products"; that entered in the application [4] proceeding denies plaintiff's application for additional operating authority.

To place the contentions of the parties in proper perspective, it will be helpful to review the somewhat tortuous course of the administrative proceedings before the Commission. The interstate authority under which Floyd & Beasley operates is described in the Commission Reports at 76 M.C.C. 475, 478, and in 79 M.C.C. 269, 271–272, set forth in detail in an appendix to the former report. We are concerned here with its authority to transport "textile products" (1) from the Alabama points named in Floyd & Beasley's MC–18088 (Sub-No. 24) application to all points in Tennessee, Georgia, Alabama and South Carolina, and (2) to all points in Alabama from Atlanta, Georgia, Birmingham, Alabama, Chattanooga, Tennessee, and points in South Carolina.

Contending, at least with the silent acquiescence of its competitors, that the term "textile products" includes any freight moving to or from a textile mill, plaintiff has transported to the mills such diverse items as paint, oil filters, insecticides, and machinery; it has transported outbound all products produced by the mills regardless of form, as well as by-products consisting of salt cake, crude sulphate, and soda, along with machinery to be repaired. On April 5, 1955, in Docket No. MC–18088 (Sub-No. 24), Floyd & Beasley filed an application under Section 207(a) of the Interstate

1. Avondale Mills, Inc., Cowikee Mills, West Point Manufacturing Company, Inc., Haleyville Textile Manufacturing Company, H. D. Lee Company, Riegel Textile Corporation, and the Georgia-Alabama Textile Traffic Association are intervenor-plaintiffs.

2. Defendants are the Interstate Commerce Commission, hereinafter referred to as the "Commission" and the United States. Atlanta-New Orleans Motor Freight Co., Inc., Dixie Highway Express, Inc., and Georgia-Florida-Alabama Transportation Company, Inc., are intervenor-defendants.

3. Docket No. MC–C–1920, Atlanta-New Orleans Motor Freight Company, Inc., et al. v. Floyd & Beasley Transfer Co., Inc., for convenience is referred to herein as the complaint proceeding. The Accompanying Commission report (Appendix E to complaint) has been published in pamphlet form as 76 M.C.C. 475.

4. Docket No. MC–18088 (Sub-No. 24), Floyd & Beasley Transfer Co., Inc., Extension-Textile Mill Supplies, for convenience is referred to herein as the application proceeding. The accompanying Commission report (App. H to complaint) has been published in pamphlet form as 79 M.C.C. 269.

Commerce Act [49 U.S.C.A. § 307(a)],[5] which, as amended, sought a certificate of public convenience and necessity authorizing operation, in interstate or foreign commerce, as a common carrier by motor vehicle of articles and supplies used in the maintenance and operation of textile mills, and materials which are ingredients of, consumed in, or form a part of the finished products of textile mills, except liquids, in bulk, in tank vehicles, over irregular routes, (1) from the sites of textile mills in fifty named Alabama municipalities, to points in Alabama, Tennessee, Georgia, and South Carolina, and (2) from Atlanta, Georgia, Birmingham, Alabama, Chattanooga, Tennessee, and points in South Carolina to the sites of textile mills or consigned to textile mills in Alabama.

On October 17, 18 and 19, 1955, and on January 4 and 5, 1956, this application was heard in Atlanta, Georgia, by Examiner Richard Yardley. After consideration of briefs filed in behalf of Floyd & Beasley, together with those filed in behalf of protestant motor carriers, on September 5, 1956, the exam-iner's recommended report and order was served. Expressing the opinion that Floyd & Beasley had been engaging in operations under a patently absurd construction of the commodity description "textile products," the examiner concluded that the commodities which it is authorized to transport under its textile products authority are those commodities which are included in the term as defined in the Commission's Bureau of Motor Carriers' Administrative Ruling No. 99,[6] and that the present and future public convenience and necessity do not require the operation for which authority was sought. On January 26, 1956, in Docket No. MC–C–1920, four common carriers by motor vehicle, protestants in the application proceeding, filed a complaint alleging that Floyd & Beasley is and has been engaged in unauthorized transportation in violation of Section 206 (a) of the Interstate Commerce Act [49 U.S.C.A. § 306(a)].[7] They contended, and Floyd & Beasley admitted, that it had interpreted its authority to transport "textile products" to authorize the transportation of commodities of all

5. Section 207(a) of the Interstate Commerce Act [49 U.S.C.A. § 307(a)] provides in part as follows:
   "Subject to section 210, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to control the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied: * * *."

6. That ruling states:
   "Question: May a motor carrier authorized to transport only 'textile products' transport yarn, dresses, or suits?
   "Answer: The term 'textile products,' as used in certificates and permits, includes textiles which are generally used or produced by textile mills, and does not include manufactured articles which are included in the term for other pur-poses, as in rules or regulations to prevent misbranding. The term as used in our certificates, includes yarn made of fiber, whether animal, vegetable, or synthetic, and also piece-goods, sheets, pillow cases, hosiery, towels and other articles made entirely of cloth and frequently manufactured in textile factories, but does not include clothing or other articles, the manufacture of which requires buttons, other fasteners, or attached trimmings."

7. Section 206(a) (1) of the Interstate Commerce Act [49 U.S.C.A. § 306(a) (1)] provides in pertinent part as follows:
   "Except as otherwise provided in this section and in section 210a, no common carrier by motor vehicle subject to the provisions of this part shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: * * *"

kinds that are used in any manner in textile mills.

The complaint proceeding was handled under the Commission's modified procedure upon submission of verified statements of fact and argument, the record in MC–18088 (Sub-No. 24) application proceeding being incorporated by reference by agreement of the parties. On September 28, 1956, the recommended report and order of Examiner Thomas S. Morris was served. He concluded that the term "textile products" is appropriately defined in Administrative Ruling No. 99; that the transportation of materials and supplies used by textile mills has been conducted in violation of Section 206 of the Act, and that Floyd & Beasley should cease and desist from all operations found to be unlawful.

After the filing by Floyd & Beasley of exceptions to the recommended reports and orders in both the complaint and application proceedings, the filing of exceptions in the application proceeding by certain intervening shippers, and replies by opposing motor carriers, Division 1 of the Commission issued a report and order, dated June 18, 1957, in the consolidated proceedings. In its report, the Commission concluded that Administration Ruling No. 99 properly construed the term "textile products"; that Floyd & Beasley's authority to transport textile products cannot be construed to authorize transportation of textile mill supplies and materials; that Floyd & Beasley, without appropriate authority, has engaged in the transportation of articles, materials, and supplies used in the maintenance and operation of textile mills, and materials which are ingredients of and used in the manufacture of textile products; that it will be required to cease and desist from operations found to be unlawful; and, that it has failed to establish that public convenience and necessity require the authority sought in the application proceeding.

Thereafter, Floyd & Beasley filed a petition for reconsideration, oral argument, and further hearing, the request for further hearing being supported by verified statements of various executives of textile manufacturers' associations and heads of schools of textile technology. Petitions for reconsideration were also filed by various intervening shippers, and replies were filed by opposing motor carriers, including the complainants in the complaint proceeding. The Commission reopened the proceedings for reconsideration, denied oral argument and further hearing, and issued a report on reconsideration, dated May 29, 1958, by Division 1.

In such report, Division 1 disapproved Administrative Ruling No. 99, declaring that the exclusion of such articles of clothing as dresses, blouses, shirts, trousers, and gloves from the term "textile products" merely because they are manufactured with buttons, or other fasteners, or trimmings was unjustified. The Commission further concluded that "textile products" does not embrace by-products such as salt cake, crude sulphate, and soda; that the term does not include materials, supplies, or equipment, and that Floyd & Beasley be required to cease and desist from unauthorized operations. With respect to the MC–18088 (Sub-No. 24) application for additional authority, the Commission reversed its prior determination and concluded that the certificate sought should be granted, Commissioner Walrath dissenting.

Upon the filing by protestant motor carriers of petitions for reconsideration of the application proceeding and oral argument and replies by Floyd & Beasley and intervening shippers, the Commission again reopened the application proceeding for reconsideration, but denied oral argument. In its report dated March 30, 1959, Division 1 of the Commission held that Floyd & Beasley had failed to establish that present or future public convenience and necessity require the authority sought, and denied the application.

Again Floyd & Beasley petitioned for reconsideration and oral argument; the intervening shippers petitioned for reconsideration, and opposing motor carriers replied. By order dated October

21, 1959 the Commission denied reconsideration and oral argument. Accordingly, the Commission's order of March 30, 1959, denying the application for additional authority has become final. Likewise, although its effective date was postponed at the request of this court, the Commission's cease and desist order of May 29, 1958, has become final.

It is not disputed on the record of these proceedings that since 1944, Floyd & Beasley has rendered efficient and valuable transportation services to the textile mills in Alabama. Under the authority of its certificate limited to the carriage of "textile products", it has continuously picked up textile products at the mills, transported them to distant destination points, and, whenever possible, has brought back equipment, supplies, and materials to the mills on the return trip. The evidence before the Commission shows that the quantities of equipment, supplies and materials thus carried were relatively small when considered in absolute terms, but that the availability of such traffic was highly important to its operations and that the transportation service it rendered with respect to shipments in less-than-carload lots were of vital economic importance to the textile mills.

The foregoing recital is an elaborate backdrop for two simple, but basic, issues which may be stated in question form. On the record before it, was there a rational basis for the Commission's determination that the commodity description "textile products" in plaintiff's certificate does not authorize the transportation of supplies and equipment used in the maintenance and operation of textile mills, and materials which are ingredients of, and used in the manufacture of, textile products? If such construction is sustained, was the Commission's action in declining to grant plaintiff additional authority to enable it to continue to transport textile mill equipment, materials and supplies as a part of its service for Alabama textile mills violative of applicable statutory standards or without a rational basis in the record?

Having canvassed the "whole record" in obedience to the command of the Administrative Procedure Act,[8] we are of the opinion that there is substantial evidence to support the Commission's definition of the commodity description, "textile products" in plaintiff's certificate. Contentions identical to those advanced herein by plaintiff were disposed of by this court in Malone Freight Lines Inc. v. United States, 107 F.Supp. 946, 949, affirmed 344 U.S. 925, 73 S.Ct. 497, 97 L. Ed. 712, as follows:

"Our function does not involve a de novo construction of the certificate or a re-evaluation of the undisputed facts relating to the services being performed under the pretended warrant of its authority. We are not concerned with the weight of the evidence. The scope of our review is necessarily confined to the interpretation placed by the Commission upon a certificate of its own creation. We are bound by that interpretation unless we are persuaded that it was capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law. It is beyond our province to consider 'the soundness of the reasoning by which its conclusions were reached.'

\*　　\*　　\*　　\*　　\*　　\*

"It is not felt that Title 49 U.S. C.A. § 312, Interstate Commerce Act, Part ii, § 212, providing for the revocation of a certificate, is applicable, and to apply it would be to assume the plaintiff's contention of the issue, namely, that the contested operations were authorized by the certificate and revoked by the Commission's order. The Commission's interpretation of the certificate never included the finding that these operations were authorized and thus

8. 60 Stat. 237, 5 U.S.C.A. § 1001 et seq.

it could not revoke authority that never existed."

To the authorities relied upon therein and cited in the footnotes to the opinion may be added the following: Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484; Pomprowitz v. United States, D.C., 119 F. Supp. 824, affirmed 348 U.S. 803, 75 S.Ct. 42, 99 L.Ed. 634; Dart Transit Co. v. Interstate Commerce Commission, D.C., 110 F.Supp. 876, affirmed 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394; Adirondack Transit Lines v. United States, D. C., 59 F.Supp. 503, affirmed 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393.

While there is evidence in the record opposed to the Commission's construction of such certificate, it would require an incredible feat of dialectic gymnastics to expand "textile products", which are not words of art, to include supplies and equipment used in the maintenance and operation of textile mills, and materials which are ingredients of, and used in the manufacture of, textile products.

■■ The main thrust of plaintiff's attack upon the Commission's order in the application proceeding is directed against its ultimate finding that the present or future public convenience and necessity do not require the enlargement of plaintiff's existing certificate to permit a continuation of services found unauthorized thereunder in the complaint proceeding.

It is said that such finding is at war with the National Transportation Policy[9] in that it would inevitably result in wasteful transportation; that it is premised upon inappropriate standards, and that it is based upon giving improper effect to the finding of previous unlawful operations.

By a long line of cases it is authoritatively settled that the Congress has delegated to the Commission broad and exclusive discretion to determine public convenience and necessity and that it is not the function of this court on review to resolve relevant factual issues entrusted to the expertise of such administrative body. Chesapeake and Ohio Railway Co. v. United States, 283 U.S. 35, 51 S.Ct. 337, 75 L.Ed. 824; Texas & Pacific Railway Co. v. Gulf, C. & S. F. Railway Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578; State of Colorado v. United States, 271 U.S. 153, 46 S.Ct. 452, 70 L. Ed. 878; Powell v. United States, 300 U.S. 276, 57 S.Ct. 470, 81 L.Ed. 643; Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051; United States v. Pierce Auto Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L. Ed. 821; McLean Trucking Co. v. United States, D.C., 63 F.Supp. 829; Consolidated Freightways v. United States, D.C., 83 F.Supp. 811; Norfolk Southern Bus Corporation v. United States, D.C., 96 F. Supp. 756, affirmed 340 U.S. 802, 71 S. Ct. 68, 95 L.Ed. 590; Capital Transit Co. v. United States, D.C., 97 F.Supp.

9. The National Transportation Policy of September 18, 1940 (49 U.S.C.A., preceding Sections 1, 301, 901 and 1001) provides:

"It is hereby declared to be the national transportation policy of the Congress to provide for fair and impartial regulation of all modes of transportation subject to the provisions of this Act, so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical, and efficient service and foster sound economic conditions in transportation and among the several carriers; to encourage the establishment and maintenance of reasonable charges for transportation services, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices; to cooperate with the several States and the duly authorized officials thereof; and to encourage fair wages and equitable working conditions; —all to the end of developing, coordinating and preserving a national transportation system by water, highway, and rail, as well as other means, adequate to meet the needs of the commerce of the United States, of the Postal Service, and of the national defense. All of the provisions of this Act shall be administered and enforced with a view to carrying out the above declaration of policy."

614; Border Express v. United States, D.C., 120 F.Supp. 23; Southern Kansas Greyhound Lines v. United States, D.C., 134 F.Supp. 502, affirmed 351 U.S. 921, 76 S.Ct. 779, 100 L.Ed. 1453; Sinett v. United States, D.C., 136 F.Supp. 37.

▪ The complaint that the Commission based its denial of plaintiff's application for additional authority upon its finding of previous unlawful operations under its existing certificate is deserving of more serious consideration. This contention is not without support on the record considered as a whole. The Commission has twice reversed itself on the question of whether the application should be granted. It first held that it should not, and thereafter, upon reconsideration, held that it should be granted. The latter conclusion was arrived at over a dissent which stressed that plaintiff should not be allowed to profit from illegal operations. Upon a second recon-

sideration, this dissent prevailed. After meticulous consideration of the record of proceedings before the Commission, we are persuaded that the Commission was not dominated by a spirit of vindictiveness and a desire to punish for what it found to be past transgressions of authority in concluding that plaintiff had failed to establish that the present or future public convenience and necessity require its proposed operation. We are not, therefore, required to examine the power of the Commission, in an application proceeding under Section 207(a) of the Interstate Commerce Act, to deny the application as a punishment for violations of pre-existing authority, whether wilful or inadvertent.

▪ An excerpt from the Commission's discussion of the effect of prior unlawful operations in its second report on reconsideration (79 M.C.C. 273, 274) is set out in the margin.[10] Far from

10. "The opposing carriers are primarily transporters of general commodities mainly over regular routes. Collectively, they serve all the mill points here involved and provide single- and joint-line service from and to practically all points in the territory sought in the application. All are in active competition with applicant and have lost traffic because of the latter's unlawful operations. They consider the involved traffic desirable and essential to their overall operations, and indicate that if awarded the business they will make the necessary adjustments to insure the prompt availability of equipment and the performance of efficient and expeditious service.

"We are impressed with the logic of the position taken by the protestants. True, their views had been presented at the time a grant of authority was made in the prior report on reconsideration, but we now believe too much weight was accorded at that time to the fact that a denial of the authority requested would result in a substantial loss of traffic by applicant. We recognize that a number of shippers have used applicant's service and desire the continuance thereof. On the other hand, the protestants have served the area involved for many years, and the record is clear that the supporting shippers had then and now have available an abundance of motor-carrier service.

"In addition, we think that, in making the prior grant of authority, too much weight was given to the desires of the supporting shippers to have available a service of one carrier on inbound shipments as well as outbound movements of textile products, and not enough weight to the fact that the applicant's outbound service was conducted without appropriate authority in flagrant disregard of the terms of its certificate. Undoubtedly, much of the traffic applicant transported in its unlawful operations was obtained at the expense of the existing carriers. In the final analysis such promiscuous disregard for regulation cannot be lightly regarded in a situation such as we have before us here. Although the supporting shippers prefer applicant's service and consider it more convenient, their evidence does not establish why the opposing carriers could not provide equally satisfactory transportation. There is no showing of any substantial deficiencies in the existing service; the carriers providing such services have the necessary equipment and earnestly desire to participate in the handling of the traffic. Unless and until services provided by the existing carriers have been tried and found wanting, we cannot justifiably find a need for additional service from and to the numerous origins and broad destination territory embraced by the instant application."

demonstrating that the Commission was actuated by an arbitrary and capricious desire to punish, it is convincing that the Commission was preoccupied with determining whether existing facilities are inadequate because existing authorized carriers are not ready, willing and able to perform such service. Surely the circumstances that plaintiff, while exceeding the limits of its authority, had preempted the field by performing as a specialized carrier to handle all of the freight for its textile mill customers was relevant in determining whether there was ample, duly authorized service available to transport properly, efficiently and economically such traffic.

The orders of the Commission are affirmed.

An appropriate order will be prepared and entered dismissing the complaint.