**BOWMAN TRANSPORTATION, INC.,**
a corporation, Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants.

Civ. A. No. 66–624.

United States District Court
N. D. Alabama, M. D.

April 11, 1967.

Maurice F. Bishop, of Bishop & Carlton, Birmingham, Ala., and H. Charles Ephraim, Washington, D. C., for plaintiff.

Macon L. Weaver, U. S. Atty., Birmingham, Ala., Donald F. Turner, Asst. Atty. Gen., and John H. D. Wigger, Attorney, Department of Justice, Washington, D. C., for United States.

Robert W. Ginnane, General Counsel and John E. Faulk, Attorney, Washington, D. C., for the Interstate Commerce Commission.

Guy H. Postell and Frank D. Hall, of Postell, Schumacher & Hall, Atlanta, Ga., for R. C. Motor Lines, Inc. and Georgia-Florida Motor Express, Inc.

Norman J. Bolinger, of Schwartz, Proctor & Bolinger, Jacksonville, Fla., for M. R. & R. Trucking Co.

John W. Cooper, Birmingham, Ala., and James E. Wilson, of McInnis, Wilson, Munson & Woods, Washington, D. C., for Hennis Freight Line, Inc., Mercury Motor Express Co., Pilot Freight Carriers, Inc., Carolina Freight Carriers Corporation, Akers Motor Lines, Inc., and Johnson Motor Lines, Inc.

Before GODBOLD, Circuit Judge, and LYNNE and GROOMS, District Judges.

LYNNE, Chief Judge.

Proceeding under 49 U.S.C.A. §§ 17 and 305(g) and (h), 28 U.S.C.A. §§ 1336, 1398, 2284, 2321–2325, and 5 U.S. C.A. § 1009, plaintiff (Bowman) brought this action against the Interstate Commerce Commission (hereafter Commission) and the United States [1] to enjoin, annul and set aside the report and order of the Commission in Docket No. MC-94201 (Sub-No. 50), Bowman Transportation, Inc., Extension—Substitution of Gateways.[2] Such order denied in its entirety plaintiff's application for a certificate of public convenience and necessity permitting it to operate as a common carrier by motor vehicle over irregular routes between Atlanta, Georgia, points within fifteen miles thereof, and points in Georgia north and east of Atlanta, on the one hand, and, on the other, points in Alabama, Florida and Tennessee.

At the time of filing its application, plaintiff held certificated authority enabling interstate service as a motor common carrier of general commodities (with certain exceptions) over irregular routes between Cedartown, Lindale, Mount Berry, Rome and Summerville, Georgia, on the one hand, and on the other, all points in Alabama, Florida and Tennessee.[3] Plaintiff also held certificated authority enabling the transportation of general commodities (with certain exceptions): (1) over irregular routes (a) between points in Georgia and South Carolina, and (b) between points in South Carolina, on the one hand, and, on the other, points in North Carolina, Richmond, Virginia, and Baltimore, Maryland; and (2) over regular routes between (a) Birmingham, Alabama, and Chattanooga, Tennessee, (b)

1. The Intervenor-Defendants are M.R. & R. Trucking Co.; R.C. Motor Lines, Inc.; Georgia-Florida Motor Express, Inc.; Hennis Freight Lines, Inc.; Pilot Freight Carriers, Inc.; Mercury Motor Express, Inc.; Carolina Freight Carriers, Inc.; Akers Motor Lines, Inc.; and Johnson Motor Lines, Inc.; respectively, "M.R. &R", "R.C.", "GFME", "Hennis", "Pilot", "Mercury", "Carolina", "Akers", and

"Johnson". Since the institution of this action, Defendant Commission, by order dated October 10, 1966, in Docket No. MC-F-9476, approved the merger of R.C. and GFME.

2. 100 M.C.C. 314.

3. Referred to in proceedings before the Commission and in this court as the Five-Point Authority.

Gadsden and Anniston, Alabama, (c) Charlottesville, Virginia, and New York, N. Y., and (d) Winston-Salem, North Carolina and Baltimore, Maryland. Thus service between points covered by one certificated authority and points covered by another certificated authority could be performed by "tacking" the two authorities and operating via a common authorized point of service which is commonly referred to as a "gateway". Accordingly, plaintiff's certificates could be tacked and general commodity service performed to and from all points in Alabama, Florida and Tennessee, but in every instance, except to and from the Alabama and Tennessee regular-route points, such service was required to be rendered via one of the gateway points covered by the Five-Point Authority.

Plaintiff applied for a certificate authorizing the transportation of general commodities (with the usual exceptions) over irregular routes between points in Georgia on and north of U. S. Highway 78 and points within fifteen miles of Atlanta, Georgia, on the one hand, and, on the other, points in Alabama, Florida and Tennessee. This certificate was sought in order to enable plaintiff to utilize any point in the described north Georgia area as a gateway substituting for the existing Five-Point Authority gateways on service to and from Alabama, Florida and Tennessee points [4] and plaintiff offered to surrender the Five-Point Authority on issuance of the authority applied for.

After extended hearings the Commission's Hearing Examiner filed his report, attached as appendix A to the complaint, containing a comprehensive summary of the evidence, wherein he concluded that while a public need for the proposed service had not been established a partial grant of the authority applied for should be recommended.

The Commission found the examiner's statement of facts to be substantially correct in all material respects, and, as supplemented by its discussion of relevant evidence appearing in the record, adopted it as its own.[5]

Disagreeing in part with the recommendations of its examiner, the Commission ultimately concluded that plaintiff's application should be denied in its entirety. Plaintiff insists that such action was arbitrary and capricious, based upon findings unsupported by substantial evidence, lacking in requisite findings, and inconsistent with statutory standards.

Time and again this court has articulated its concept of principles applicable to the limited scope of judicial review of Commission orders issued in the exercise of its broad discretion in determining questions of public convenience and necessity.[6] In the interest of brevity further discussion is pretermitted. Acting within the sphere of its competence the Commission has developed criteria for determining the circumstances under which an irregular-route carrier will be authorized to eliminate the necessity of observing a gateway without making a showing that its proposed change of operations is responsive to a public need or that existing carrier services are in-

---

4. It is quite apparent upon the record that the substitution of the gateways applied for would result in substantial economic advantage to Bowman by virtue of the elimination of circuitous routes over highways both inadequate and affected with a high frequency of accidents, together with certain other operational inefficiencies. This was recognized and given due weight by the Commission. 100 M.C.C. 325.

5. 100 M.C.C. 319.

6. See, e. g. Floyd & Beasley Transfer Co. v. United States, D.C., 256 F.Supp. 23 (1966), aff'd per curiam 385 U.S. 647, 87 S.Ct. 766, 17 L.Ed.2d 668 (Jan. 23, 1967); Alabama Highway Express, Inc. v. United States, D.C., 241 F.Supp. 290 (1965), aff'd per curiam 382 U.S. 106, 86 S.Ct. 255, 15 L.Ed.2d 190 (1965); Eagle Motor Lines, Inc. v. United States, D.C., 236 F.Supp. 502 (1964); Floyd & Beasley Transfer Co. v. United States, D.C., 185 F.Supp. 390 (1960); American Trucking Ass'ns v. United States, D.C., 101 F.Supp. 710, 726 (1951).

adequate.[7] Announced in Childress—Elimination Sanford Gateway, 61 M.C.C. 421 (1952),[8] amplified in Motor Common Carriers of Property-Routes and Service, 88 M.C.C. 415 (1961) and applied in these proceedings they require an affirmative showing (a) that applicant is actually transporting a substantial volume of traffic from and to the points involved by operating in good faith through the gateway, and, in so operating, is effectively and efficiently competing with the existing carriers and (b) that the elimination of the gateway requirement would not enable applicant to institute a new service or one so different from that presently provided as to materially improve applicant's competitive position to the detriment of existing carriers.

These standards are entirely consistent with the judicial gloss placed upon the nebulous phrase "public convenience and necessity" appearing in 49 U.S.C.A. § 307(a) by the terse language of Judge Dobie writing for the court in Smith's Transfer Corp. v. United States, 9 Fed. Carr.Cas. ¶ 80, 848 (W.D.Va.1953):

* * * Where applicant is seeking authority to render a new service, or

to so improve his existing service as to make it tantamount to a new service, there must be a full showing of public convenience and necessity, i. e., evidence of a public need for the service. This is usually accomplished by the testimony of public witnesses (merchants, shippers, etc.) to the effect that the new service is required. Where, however, the applicant seeks only to improve a service which he is already rendering, and does not seek to originate a new service, the requirements of public convenience and necessity may be met by proof of increased safety of operation and operation economies. In such a case, permitting the applicant to realize such savings and safety is considered to result in a sufficient *indirect benefit to the public to sustain a finding of public convenience and necessity.*

■ Herein the Commission did not commit an error of law by supposing that it was without statutory power to sanction any part of the operations covered by the application (as recommended by the Hearing Examiner) unless it concluded that the whole thereof should be authorized.[9] On the contrary, it explicit-

---

7. Both the Hearing Examiner and the Commission were firmly of the opinion that the evidence in the record was wholly inadequate to support a finding that Bowman's proposed change of operations is responsive to a public need or that existing carrier services are inadequate. Counsel for plaintiff have not contended otherwise in this court.

8. (1) [W]hether applicant is actually transporting a substantial volume of traffic from and to the points involved by operating in good faith through the gateway and, in so operating, is effectively and efficiently competing with the existing carriers, and (2) whether the elimination of the gateway requirement would enable applicant to institute a new service or a service so different from that presently provided as to materially improve applicant's competitive position to the detriment of existing carriers. In the former instance, a grant of the authority sought is justified solely upon proof that the proposed operation would result in operating economies, which although pri-

marily a benefit to the applicant, indirectly benefit the public through the medium of more efficient and economical service. In the latter instance, however, where the elimination of the gateway requirement would allow a new service, or would provide applicant with a substantial competitive advantage not previously enjoyed, it is incumbent upon applicant to prove public convenience and necessity the same *as in any other application for new authority.*

9. Section 207(a) of the Interstate Commerce Act, 49 U.S.C.A. § 307(a), provides in pertinent part:

(a) Subject to section 210, a certificate shall be issued to any qualified applicant therefor, authorizing *the whole or any part of the operations covered by the application,* if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that the

ly determined that plaintiff failed to show that it was an effective and efficient competitor while operating through its five gateways with the existing carriers and that the elimination of such gateways would not materially improve applicant's competitive position to the detriment of existing carriers.[10]

We have laboriously canvassed the voluminous record to determine whether these ultimate findings are based on substantial evidence. A simple, helpful criterion for judging the substantiality of evidence in reviewing orders of the Commission was stated in Illinois C. R. Co. v. Norfolk & W. R. Co., 385 U.S. 57 at page 66, 87 S.Ct. 255 at page 260, 17 L.Ed.2d 162 (1966):

"The test on judicial review is, of course, whether the action of the Commission is supported by 'substantial evidence' on the record viewed as a whole, 5 U.S.C. § 1009(e) (5). Substantial evidence is 'enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury'".

While we have been impressed with the skillful and impressive analysis of the record evidence by counsel for plaintiff on brief and in oral argument we are clear in the opinion that there was a rational basis for the order under attack. The conclusions of the Commission resulting in its denial of plaintiff's application in its entirety were based upon adequate findings supported by substantial evidence.

Since, by stipulation of counsel, this cause was submitted upon plaintiff's prayer for final relief, an order of dismissal will be entered herein.

proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; oth-

erwise such application shall be denied * * *. (Emphasis supplied.)

