Frank A. WILLERS, Plaintiff,

v.

UNITED STATES of America,
Defendant,

and

Interstate Commerce Commission,
Intervenor.

Civ. No. 934.

United States District Court
D. South Dakota, S. D.

Aug. 9, 1955.

R. A. Bielski, Sioux Falls, S. D., for plaintiff.

James E. Kilday and James H. Durkin, Sp. Assts. to Atty. Gen., Washington, D. C. (Stanley N. Barnes, Chicago, Ill., Asst. Atty. Gen. and Clinton G. Richards, U. S. Atty., Sioux Falls, S. D., on the brief), for defendant, United States.

C. H. Johns, Washington, D. C., Asst. Gen. Counsel (Edw. M. Reidy, Gen. Counsel, Washington, D. C., on the brief), for intervenor, Interstate Commerce Commission.

Before JOHNSEN, Circuit Judge, MICKELSON, Chief Judge, and NORDBYE, District Judge.

MICKELSON, Chief Judge.

This is a suit brought under 28 U.S.C.A. §§ 1336, 2284 and 2321–2325, to vacate, set aside and enjoin the enforcement of orders of the Interstate Commerce Commission entered on October 5, 1953 and May 4, 1954, in the proceedings entitled Frank A. Willers Common Carrier Application (Docket No. M.C. 106,-307) and Frank A. Willers Extension to Indiana (Docket No. M.C. 106,307, Sub. No. 3), respectively. Plaintiff also prays that an informal opinion of the Director of the Bureau of Motor Vehicles of the Interstate Commerce Commission dated March 20, 1953, be annulled and set aside and its enforcement enjoined. The fore-

going opinion and the order of May 4, 1954, in effect, interpreted plaintiff's certificates of public convenience and necessity as not including authorization to transport farm tractors.

Plaintiff's complaint also asks this Court under the Federal Declaratory Judgment Act to interpret and construe his certificates. However, at the time of the trial, plaintiff announced his abandonment of any claim for a declaratory judgment.

By application (M.C. 106,307) filed November 19, 1945, Frank A. Willers, doing business as Willers Heavy Hauling, sought a certificate of public convenience and necessity authorizing operation, in interstate or foreign commerce, as a common carrier by motor vehicle, of contractors' and construction equipment and machinery, materials and supplies and commodities which by reason of their weight, size or length require special equipment and handling, over irregular routes between certain points in South Dakota, Minnesota and Iowa on the one hand and points in Iowa, Minnesota, North Dakota and Nebraska on the other.

After a hearing Division 5 of the Commission ordered that a certificate be issued authorizing the applicant to transport in interstate and foreign commerce:

"Such commodities as by reason of their size or weight require the use of special equipment or special handling and related contractors' materials and supplies when transported in connection with commodities which by reason of their size or weight require the use of special equipment or special handling, over irregular routes."

The certificate further designated the points and places in the above named states for such transportation, there being no dispute in this case as to the territory authorized to be served.

By application (M.C. 106,307, Sub. No. 3) filed July 26, 1948, plaintiff made further application to the Commission for an extension of his authority to trans-

port the above commodities into other territory. On March 8, 1949, the Commission, after a hearing before a hearing examiner, granted the application and authorized the applicant to transport the above named commodities between certain other points and places. Here, again, there is no dispute in this suit as to the territory authorized to be served by this second certificate.

The Commission's records do not show how the question as to plaintiff's right to transport farm tractors originated, but on June 24, 1952, the Commission's District Director in Minneapolis informed plaintiff that the question was being submitted to Washington for a ruling. This fact is disclosed by plaintiff's petition for a hearing for interpretation of such ruling and for consolidation with his application for authority to carry farm tractors filed in May, 1953. The following month plaintiff filed with the Commission his first tariff for the transportation of farm tractors. On March 20, 1953, Mr. Blanning, Director of the Commission's Bureau of Motor Vehicles, informally advised a Mr. Fowler, agent for the Associated Motor Carriers Traffic Bureau, St. Paul, Minnesota, that farm tractors which are capable of being loaded and unloaded under their own power may not be transported under the commodity description in plaintiff's certificates. A copy of Mr. Blanning's letter was sent to plaintiff on April 3, 1953, by Mr. Dennison, the Commission's District Supervisor.

By application (M.C. 106,307, Sub. No. 7) filed with the Commission on May 22, 1953, plaintiff requested authority to transport farm tractors from Rock Island, Illinois, to points in South Dakota, nine counties in Minnesota and five counties in Iowa.

On the same date plaintiff filed with the Commission a petition for a hearing to determine what commodities may lawfully be transported under plaintiff's outstanding certificates and asked that said hearing be consolidated with plaintiff's pending application for authoriza-

tion to carry farm tractors. By order issued October 5, 1953, the Commission, upon consideration of the record in the proceedings in which the certificates were issued and of the petition of the plaintiff. and the reply of Barnes Truck Service, Inc., denied plaintiff's petition "for the reason that it is not shown that the request for the hearing would serve any useful purpose."

On October 9, 1953, five days before the proposed hearing on plaintiff's application (Sub. No. 7) to carry farm tractors, plaintiff's attorney informed the Commission that plaintiff had advised him that he could not proceed with the hearing and requested that the application be withdrawn. This was subsequently done.

Plaintiff thereafter petitioned the Commission for reconsideration of its order of October 5, 1953. By order dated May 4, 1954, the Commission, upon consideration of the above mentioned record, petition and reply, denied plaintiff's petition for reconsideration and set forth the following reasons therefor:

(1) The authority granted to the carrier in the applications set forth above to transport

Such commodities which, by reason of size or weight, require the use of special equipment or special handling, and related contractor's materials and supplies when transported in connection with commodities which by reason of their size or weight require the use of special equipment or special handling,

does not authorize the transportation of farm tractors which are capable of being loaded and unloaded under their own power and may be transported on equipment which is not special equipment;

(2) The flat-bed equipment of the petitioner as described in the petition and in the accompanying picture exhibits is not special equipment, nor are the pockets, bracing, wires and chains used in securing the tractors during transportation.

Compare Rowe v. Malone, 54 M.C.C. 801;

(3) The loading, unloading and securing of the farm tractors as described in the petition does not constitute special handling within the meaning of the commodity description quoted above;

(4) A review of the records reveals that there was no intent, when the certificates in the captioned proceedings were granted, to authorize the transportation of farm tractors;

(5) The petition and accompanying exhibits adequately describe and picture the farm tractors in question, their handling, and the equipment used in their transportation and no good purpose would be served by a further hearing.

The plaintiff thereafter filed his complaint herein.

The issues to be decided by us are:

(1) Whether the Commission's interpretation of plaintiff's certificates as not authorizing the transportation of farm tractors was arbitrary and capricious;

(2) Whether the Commission's refusal to grant an oral hearing for the purpose of interpreting plaintiff's certificates was arbitrary and capricious.

A review of cases decided by the Commission and examination of plaintiff's applications for certificates, the certificates themselves and the record in the proceedings in which the certificates were issued, demonstrates that the Commission did not act arbitrarily and capriciously in interpreting plaintiff's certificates as not authorizing the transportation of farm tractors.

The Commission has classified motor carriers of property according to type of carrier, type of carrier's service and type of commodities transported. See Classification of Motor Carriers of Property, 2 M.C.C. 703 (1937). The type of commodities authorized to be transported under plaintiff's certificates and as conceded by plaintiff in his complaint, have become known in the trucking in-

dustry as so-called "heavy hauling" as distinguished from the type of commodities authorized to be transported by common carriers of general freight. See E. A. Gallagher Common Carriers Application, 48 M.C.C. 413–415 (1948).

In speaking of a commodity description substantially identical to that contained in plaintiff's certificates, the Commission stated in St. Johnsbury Trucking Co., Inc., Extension—Heavy Hauling, 53 M.C.C. 277 (1951), Page 297, "The phrase 'commodities which because of size or weight require special equipment and all related machinery parts, and related contractor's materials and supplies when their transportation is incidental to the transportation of commodities which, by reason of size or weight, require special equipment' as already pointed out enables the carrier authorized to transport such commodities to render a complete service in the particular field of transportation, but, by the same token, restricts such carriers from invading the field of another type of service."

In plaintiff's petition for a hearing to determine what commodities could be transported under the commodity description in his certificates, he stated that in transporting farm tractors he uses flat-bed equipment; that special pockets are cut in the side of the semi-trailer equipment; that the tractors are wired to each other and into the special pockets; that the tractors weigh 4200 and 5400 pounds; and that they are loaded five at a time on a semi-trailer.

The Commission has on several occasions interpreted "heavy hauling" certificates as not including commodities which can be loaded or unloaded under their own power, such as farm tractors. In interpreting plaintiff's certificates the Commission referred to Rowe Transfer & Storage Co., Inc., et al. v. Malone Freight Lines, Inc., published in part in 54 M.C.C. 801 (1952).

In the Rowe case several motor carriers of heavy commodities filed a complaint with the Commission against Malone Freight Lines, Inc., alleging that Malone was unlawfully transporting military trucks under its authority to carry general commodities not requiring special equipment. In transporting the trucks Malone used wooden blocks and the usual type of ratchet binders with chains to secure the trucks to the transporting vehicle. These vehicles were tractor-semi-trailer units, each semi-trailer carrying a single military truck. The semi-trailers were equipped with sockets into which bolts or low sides could be fitted and side rails to which ropes or chains could be fastened. Chains with ratchet tightening devices were placed across the back and front of the military truck and hooked to the side rail of the semi-trailer and tightened by the ratchet. Triangular wooden blocks were placed in front of and behind the wheels of the military truck. The trucks were normally loaded from a high platform by use of a warehouse truck to push them onto the trailer, although in some instances they were loaded manually. The issue was whether the restriction against the transportation of commodities requiring special equipment precluded Malone from transporting military trucks. The Commission held that Malone was not precluded from transporting the trucks under its general commodities authority, since the transportation of the trucks did not require the use of special equipment. The Commission referred to its previous holding in Gallagher Common Carrier Application, supra, that ordinary flat-bed vehicles did not come within the term "Special Equipment", and further added that the fact that such vehicles were equipped with sockets and side rails did not change the delineation, and that the blocks and chains as used by Malone did not constitute "Special Equipment".

The language customarily used by the Commission in authorizing transportation of farm tractors is clearly indicated in the Commission's report and order in Clark Transport Co. Extension—Farm Tractors, 62 M.C.C. 555 (1954).

It appears that the Commission has consistently ruled that flat-bed vehicles are not "Special Equipment" (Gallagher and Rowe cases, supra), even when wooden blocks, ratchet binders, chains, sockets, bolts and low sides are used in conjunction therewith (Rowe case, supra); that the use of special equipment in loading and unloading is a factor to be considered in determining what commodities can be carried by so-called "Heavy Haulers" (Gallagher, Rowe and St. Johnsbury cases, supra); that vehicles that can be loaded and unloaded under their own power do not require special equipment or special handling (Rowe, Clark and St. Johnsbury cases, supra); and that in authorizing carriage of farm tractors the Commission has expressly used the term "Farm Tractors" or has impliedly authorized such carriage by using the terms "farm machinery", "farm implements" or "general commodities not requiring special equipment" (Clark case, supra).

That the term "related contractor's materials and supplies, when transported in connection with such (heavy) commodities", as used in plaintiff's certificates, does not include farm tractors seems apparent on its face. Contractor's materials and supplies not requiring special equipment can be transported only as an incident to the transportation of heavy commodities requiring special equipment or special handling, and must be related thereto and transported therewith. The report and order of Division 5, approving plaintiff's first application makes specific reference to the above limitation. The commodity description in plaintiff's second application and certificate is identical to that contained in his first certificate. Plaintiff's petition for a hearing clearly shows that the farm tractors in question are not transported in connection with any other commodities but are transported alone, five to a trailer.

A careful review of the record including the testimony of the witnesses upon plaintiff's application for the certificates which he holds clearly shows that neither the applicant, any of his witnesses, the examiner nor the Commission ever had anything in mind at the time of these hearings and the granting of the certificates except so-called "heavy hauling" requiring special equipment and special handling. Only once in the testimony before the examiner and the Commission was the term "farm tractors" mentioned, and that was only in an incidental fashion.

At the time of the hearing upon plaintiff's first application he was operating under temporary authority for the transportation of "contractor's and construction equipment, machinery, materials and supplies; commodities which because of size or weight require the use of special equipment, or parts thereof, over irregular routes * * *." In establishing the need for permanent operating authority the plaintiff and shippers who had used his services testified as to plaintiff's past operations under his temporary authority. The transcript of the testimony shows that plaintiff had been exclusively engaged in the transportation of contractor's and construction equipment, machinery, materials and supplies. With one exception all of the shippers who testified in support of the application were general building contractors; road building contractors; sellers of industrial equipment, heavy road construction equipment and machinery; and quarry operators.

It therefore appears that the Commission's interpretation of plaintiff's certificates as not authorizing transportation of farm tractors was not erroneous, or arbitrary and capricious, but is fully sustained by the record, and is entirely consistent with its position as disclosed by its rulings in the above cited cases.

We pass now to the question of whether the Commission's refusal to grant an oral hearing for the purpose of interpreting plaintiff's certificates was arbitrary and capricious. In its order of October 5, 1953, the Commission denied plaintiff's petition for a hearing to determine what commodities could be lawfully

transported under his outstanding certificates and for consolidation of said hearing with plaintiff's pending application for authority to carry farm tractors. The reason given by the Commission was that "It (was) not shown that the requested further hearing would serve any useful purpose." After plaintiff had withdrawn his application for authority to carry farm tractors, the Commission, by order dated May 4, 1954, denied plaintiff's petition for reconsideration of the Commission's order of October 5, 1953. In denying the petition the Commission, in effect, interpreted plaintiff's certificates as not including authorization to carry farm tractors, and this order of the Commission stated that flatbed equipment as described in the petition and in the accompanying picture exhibits was not special equipment, nor were the pockets, bracing, wires and chains used in securing the tractors during transportation. The Commission further stated in its order that the loading and securing of the farm tractors as described in the petition does not constitute special handling within the meaning of the commodities description in plaintiff's certificates. The Commission further stated that a review of the record (in the proceedings in which plaintiff's certificates were issued) revealed that there was no intent to authorize the transportation of farm tractors and that the petition and accompanying exhibits adequately described the farm tractors in question, their handling and the equipment used in their transportation, and no good purpose would be served by a further hearing. Plaintiff and other witnesses who testified in support of plaintiff's applications for these certificates were fully heard in the hearings on the applications, and the Commission considered such testimony in its order denying a further hearing. The Commission also considered the reply of Barnes Truck Service, Inc., in opposition to the petition of plaintiff for a further hearing. It is difficult to perceive how a further hearing could have enlightened the Commission as to its own intent in issuing the certificates.

It has been held in many cases that the Commission can issue an order interpreting certificates of public convenience and necessity without first holding a further oral hearing if there is no dispute as to the facts. Riss & Co., Inc. v. U. S., D.C., 117 F.Supp. 296; Pennsylvania R. Co. v. U. S., D.C., 288 F. 88.

The Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., contains many provisions requiring the Commission to grant a hearing in the performance of certain of its functions but nowhere is there a requirement that it grant a hearing interpreting a certificate.

We have carefully read the cases cited by plaintiff and find that they have no application under the facts in this case. The orders which plaintiff herein asks us to set aside take no rights from him, they merely interpret what rights he had from the beginning.

We cannot vacate, set aside or enjoin the enforcement of orders of the Interstate Commerce Commission unless it appears from the record that such orders were clearly erroneous or arbitrary and capricious. See and compare Dart Transit Co. v. I. C. C., D.C., 110 F.Supp. 876, affirmed per curiam, 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394.

We conclude that there is sufficient factual and legal basis for the Commission's challenged orders in the proceedings had on the certificate applications and in the Commission's established rulings and definitions and that plaintiff was not denied due process of law in the proceedings before the Commission and that plaintiff's complaint herein should be dismissed.

Judgment may be entered accordingly.