**W. J. DILLNER TRANSFER COMPANY, Heavy-Specialized Carriers Conference Steel City Transport, Inc., Ace-Doran Hauling and Rigging Company, Plaintiffs,**

v.

**INTERSTATE COMMERCE COMMISSION, and United States of America, Defendants.**

**Civ. A. 60–606.**

United States District Court
W. D. Pennsylvania.
April 26, 1961.

**824**

Ernie Adamson, Pittsburgh, Pa., for plaintiff.

Herbert F. Baker, Columbus, Ohio, Henry Wick, Jr., Delisi & Wick, Pittsburgh, Pa., for intervenors.

Donald A. Brinkworth, Pittsburgh, Pa., for Pennsylvania R. Co.

Fritz Kahn, Washington, D. C., for ICC.

Wendell Stanton, A. U. S. A., Pittsburgh, Pa., for U. S.

Before STALEY, Circuit Judge, and McILVAINE and SORG, District Judges.

McILVAINE, District Judge.

This is an action to enjoin, annul and set aside the report on oral argument and orders of the Interstate Commerce Commission, entered April 10 and September 23, 1959, and January 13, and August 1 and 16, 1960, in Docket No. MC–C–1766, W. J. Dillner Transfer Co. —Investigation of Operations, wherein the Commission construed Dillner's certificate as a heavy hauler and rigger as not authorizing the transportation of certain bundled articles of iron and steel and palletized firebrick, and ordered it to cease and desist from the performance of such unauthorized operations.

In 1954 certain motor carriers petitioned the Interstate Commerce Commission, hereinafter referred to as the Commission, to enter an order investigating certain alleged unlawful practices of W. J. Dillner Transfer Co., hereinafter referred to as Dillner. Thereafter Dillner moved to dismiss this petition and petitioned the Commission for declaratory judgment to clarify its authority.

In February 1955, the Commission by order instituted an investigation docketed as No. MC–C–1766, W. J. Dillner Transfer Co.—Investigation of Operations, to determine what commodities can be transported by Dillner and whether it has engaged in operations not authorized by the terms of its certificate. It would appear that under Dillner's certificate Dillner is authorized to engage as a common carrier by motor vehicle in the transportation of: *Heavy machinery* and *such commodities* which because of their weight and size require special equipment,

> Between points and places in Allegheny County, Pennsylvania, on the one hand, and, on the other, points and places in West Virginia, Ohio and New York.

And by subsequent certificate was authorized to transport *such commodities* as, because of their weight or size require special equipment,

> Between points and places in Pennsylvania west of U. S. Highway 15, on the one hand, and, on the other, points and places in the southern peninsula of Michigan, Ohio, West Virginia, Delaware, New Jersey, and New York.

Between points and places in Ohio, on the one hand, and, on the other, points and places in West Virginia.

The issue really before the Commission was what commodities may be transported by a motor carrier authorized to transport such commodities which because of their weight and size require special equipment. In attempting to resolve this problem, the hearings were held before an Examiner of the Commission on July 26 through 28, and October 7, 1955. There does not appear to be any complaint about the hearings.

At the hearings testimony was offered by Dillner. Following the submission of briefs the Examiner filed his proposed report in which he divided the commodities into two groups:

Group I consisting of steel channels, plates strip, coils of sheet, and rolling-mill rolls, each individual piece of which is of such weight that it cannot be loaded manually, but requires a crane or other special device for loading.

Group II consisting of steel channels, plates, sheets, bars, rods, pipe, coils, rolling-mill rolls, and firebrick, each individual piece of which is not in excess of the weight and size that can be loaded and unloaded manually, without the use of a crane or other special device, but which as tendered to the carrier are in bundles or packages, or fastened on skids, in such quantity and of such aggregate weight that a crane or other special device is necessary to load the bundles, packages, and skids.

Exceptions were filed to this report by several of the parties. On October 3, 1956, the entire Commission heard oral arguments. The report of the Commission was entered on April 10, 1959, and is reported at 79 M.C.C. 335. The Commission found:

"* * * the transportation of the commodities in group 1 (which were loaded and unloaded by the shipper or consignee) by * * * Dillner * * * has been and is authorized by * * * [its] certificates and is lawful * * * and that the transportation by Dillner of commodities in group 2 consisting of steel channels, plates, sheets, bars, rods, pipe, coils, rolling-mill rolls, not required by the inherent nature of the commodity to be bundled in the size contemplated by group 2, and of firebrick, is not authorized by its certificate and is unlawful."

It ordered Dillner

"to cease and desist, and thereafter to refrain and abstain, from all operations in interstate or foreign commerce, of the character and scope found in said report to be unlawful and unauthorized."

Application was made for reconsideration and/or rehearing, and the Commission with minor exception denied these. Subsequent petitions for rehearing were filed and denied, and ultimately on August 1, 1960, an order of the Commission was entered fixing September 23, 1960, as the date on which Dillner must comply with the order of the Commission. Thereafter a complaint was filed in the District Court seeking to enjoin, annul and set aside the orders of the Commission referred to above. On September 27, 1960, this Court with the consent of all the parties issued a restraining order pending the disposition of the case before the Court.

█ The issue as we see it is whether the Commission erroneously, arbitrarily or capriciously interpreted the certificate of the Dillner Company as conferring no rights to transport certain bundled articles of iron and steel and palletized firebrick. In making the determination of this basic issue there are certain principles that we must follow. The fundamental principle is that the interpretation of a certificate issued by the Commission is best left to the Commission. Service Storage & Transfer Co. v. Commonwealth of Virginia, 359 U.S. 171, 79

S.Ct. 714, 3 L.Ed.2d 717. And it would appear that the District Court is bound by that interpretation unless it is persuaded that the interpretation is capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law. Malone Freight Lines v. United States, D.C.N.D.Ala.1952, 107 F.Supp. 946, 949, affirmed mem. 1953, 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712. This same principle has been recognized in this district in Waite v. United States, 161 F.Supp. 856, 860. The Court held that its duty is to determine whether the decision of the Commission is arbitrary, capricious, or constituted an abuse of discretion or otherwise not in accordance with the law. It is to determine whether or not the Commission's order was supported by substantial evidence. The scope of judicial review is limited. The Court pointed out that the decision of the Commission carries the presumption of validity.

Counsel for Dillner urges that the burden of proof is upon the Commission, and he bases a considerable portion of his argument on such assertions. However, in the Waite case, this Court held that the decision of the Commission carries a presumption of validity. "Plaintiffs have the burden of showing that it is invalid because it is unjust and unreasonable in its consequences." The burden is on Dillner to show this. Dillner must show that the decision of the Commission is not based on substantial evidence.

There have been many pages of testimony taken before the Commission, voluminous briefs filed before the Commission and this Court, and extensive arguments held before the Commission and now before the Court. But the simple question is what is meant by the phrase, "such commodities as because of their weight and size require special equipment"?

The Commission found that Dillner had been transporting shipments of iron and steel articles, namely structural steel, steel plates, strips, sheets, rods, bars, and tin mill products. Also certain high-temperature refractory products including brick and clay products in aggregations, packages, or pallets weighing 500 pounds or more. The Commission found that many of the iron and steel products consisted of a number of individual pieces held together in a bundle or by removable strips or other binding, which bundles weigh from 500 to 15,000 pounds or more. Dillner had been transporting such articles weighing from 2,000 to 15,000 pounds or more. The steel pieces would vary in size.

The Commission in its report went on to detail the different types of steel and the type of firebrick.

The Commission attempted to define commodities which because of their weight and size require special equipment. In determining whether the commodities sought to be transported on a flat-bed vehicle by a heavy hauler such as Dillner's is of such weight or size to require the use of special equipment for the loading or unloading, it took into account the size of the individual unit being shipped, rather than that of the aggregated load or shipment.

Dillner urges that a flat-bed trailer such as used for the transportation of steel products is special equipment. However,

> "It appears that the Commission has consistently ruled that flat-bed vehicles are not 'Special Equipment' * * * even when wooden blocks, ratchet binders, chains, sockets, bolts and low sides are used in conjunction therewith * * * that the use of special equipment in loading and unloading is a factor to be considered in determining what commodities can be carried by so-called 'Heavy Haulers'." Willers v. United States, D.C.D.S.1955, 133 F.Supp. 270, 274.

Thus, Dillner has not shown that a flat-bed trailer is special equipment. It

would appear that many of the consignors and consignees have special equipment on their loading docks for handling heavy articles. However, this would not appear to militate against a so-called heavy hauler carrying the products merely because he does not do the work. The test is what is the commodity itself to be transported, and not who does the special loading. In accordance with this view, the Commission decided that the individual unit being shipped rather than the aggregated load or shipment was the determinative factor. Obviously, steel products when bundled become very heavy. Does the bundling of special products which might be light individually convert them into commodities that would fall into the field of a heavy hauler? The Commission decided that it did not. It pointed out that the test is what is the inherent nature of the commodity itself. If the commodity required aggregation not for the mere purpose of economy and efficiency, but because of the inherent nature of the commodity, and after bundling they would become too heavy to handle without the use of special equipment, special bundled commodities would be within the purview of an article requiring special equipment; otherwise it would not. Dillner has the burden of showing that this test that led to the conclusion of the Commission was not reasonable. We are not satisfied that he has met this burden, and the Commission on the other hand has pointed to many of its decisions in which it has set forth its analysis of aggregation of shipments.

■ The question of whether Dillner had the right under its existing certificates to transport palletized firebrick presented a difficult question. The decision of the Commission which denied Dillner the right to transport this firebrick demanded careful scrutiny by the Court. The examiner found that the inherent nature of the product demanded it be palletized and consequently within Dillner's authority. The Commission disagreed; and at first glance their findings in this regard seemed in conflict.

However, a careful reading of the testimony shows their final conclusion to be based on substantial evidence. They could well have found that firebrick was exclusively handled by the railroads prior to 1950; that they could be hauled unpalletized and, in fact, some are so hauled; that convenience and saving labor and costs are the main consideration in palletizing this commodity. Sufficient evidence was present to allow reasonable men to find that this commodity did not through its inherent characteristics demand that it be hauled only *after* it was placed on pallets. The testimony of the witness, Bischel, appears to be controlling on this issue. It was more than a mere scintilla of evidence in support of the Commission's findings. The findings were based on substantial evidence even though there was some evidence to the contrary. The test is not whether on this issue this Court agrees with the majority or the minority view of the Commission. It is simply whether the majority view was based on substantial evidence. We find it to be properly supported.

Actually with the modern advances in palletizing articles for economy and ease in handling articles by truck, the Commission was faced with a knotty question. To accept the minority view could well have extended the heavy haulers' certificates to cover the hauling of china cups or wooden nutmegs, a contention not advanced by petitioners herein. The Commission's test is a reasonable test, and firebricks fit into an acceptable slot.

Dillner also urges that the report of the Commission is at variance with the examiner's recommended report and, therefore, it is arbitrary, capricious, and unlawful.

■ The United States Court of Appeals for this circuit has pointed out that as a general rule a Commission's findings should be given much weight in cases in which they have specialized and intimate knowledge of the whole proceedings. However, they point out that a slightly different rule is applicable when

a final determination by the Administrative Agency *rejects* the findings of a hearing examiner. It would appear that an examiner's report is not as unassailable as a master and can be reversed by the Commission. The reviewing court while it need not give a trial examiner's findings more weight than they deserve in the light of reason and judicial experience, they should be accorded the relevance that they reasonably command in answering the over-all question whether the evidence supporting the Commission's order is substantial. See In re United Corporation, 3 Cir., 249 F.2d 168.

An examination of the proposed report of the examiner and the report of the Commission indicates that there was not a substantial variance in the two reports. The examiner felt that Dillner ought to be permitted under Group II to transport aggregate loads of steel plates, steel sheets, and firebrick. The Commission found that the transportation of these commodities except as to the bundling of sheets and plates were required by their inherent nature was beyond the scope of Dillner's authority.

The Commission concluded that steel sheets and plates which could be handled individually and were palletized or packaged not because of necessity, but because of efficiency and economy was insufficient reason to hold that their transportation required special equipment. A similar conclusion was reached on firebrick. It would appear that their main difference was in determining which overall products were aggregated due to their inherent nature and which overall products were aggregated for economy purposes. The Commission set forth in its report wherein it differed with its examiner. It is clearly set forth where it differed from its examiners, and that is all it is required to do. We might point out that the difference here did not go to the credibility of witnesses in a situation in which the examiner's opinion ought to be given considerable weight but rather its interpretation and meaning of terms and the Commission's decisions in those cases are for the Commission rather than for the Examiner in the final instance. And, of course, there is no rule that holds that the Commission may not differ from its hearing examiner. See Sinett v. United States, D.C., 136 F.Supp. 37.

Dillner also complains that the Commission did not consider its so-called grandfather clause. From the brief filed by the Commission, it would appear that this was not referred to by the Commission. However, it appears that Dillner did not prior to June 1, 1935, and continuously thereafter transport packaged articles of iron and steel and palletized firebrick. The Commission was construing Dillner's rights and had there been evidence that Dillner was transporting this material prior to June 1, 1935, and had the Commission failed to consider it, it would present a different problem. However, in view of the fact that Dillner offered no evidence as to its "grandfather operations" we do not see why it was incumbent upon the Commission to consider this.

Basically, the burden is upon Dillner to prove that the order and report of the Commission was clearly erroneous, capricious, and arbitrary, and not supported by substantial evidence. We do not feel that Dillner has met the burden imposed by law. It is not our function to set aside the report merely because we might or might not differ with the Commission. We must act when we find that the report and order is not supported by substantial evidence. The burden is upon Dillner to prove this to the Court. It has not met this burden of proof, and, therefore, an appropriate order will be entered dismissing the complaint.