W. J. DILLNER TRANSFER COMPANY, Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Middle Atlantic Conference, Pennsylvania Railroad Company, and Central States Motor Freight Bureau, Inc., Intervenors.

Civ. A. No. 62–516.

United States District Court W. D. Pennsylvania.

Feb. 8, 1963.

Ernie Adamson, Pittsburgh, Pa., for plaintiff.

Lee Leovinger, John H. D. Wigger, U. S. Dept. of Justice, Washington, D. C., for United States.

Robert W. Ginnane, Fritz R. Kahn, I. C. C., Washington, D. C., for I. C. C.

Bryce Rea, Jr., Watkins & Rea, Washington, D. C., John A. Vuono, Delisi & Wick, Pittsburgh, Pa., for Middle Atlantic Conference, intervenor.

Donald A. Brinkworth, Pittsburgh, Pa., for Pennsylvania Railroad, intervenor.

Earl E. Meisenbach, Chicago, Ill., John A. Vuono, Delisi & Wick, Pittsburgh, Pa., for Central States Motor Freight Bureau, intervenor.

Before STALEY, Circuit Judge, GOURLEY, Chief District Judge, and WILLSON, District Judge.

WILLSON, District Judge.

This is an action to annul, vacate and set aside an Order of the Interstate Commerce Commission. A Three Judge Court was empaneled to hear and determine this matter pursuant to the provisions of Section 2284 of Title 28 United State Code by Order of Chief Judge John Biggs, Jr., Third Judicial Circuit entered September 13, 1962. Thereafter, Middle Atlantic Conference, Pennsylvania Railroad Company and Central States Motor Freight Bureau, Inc., were permitted to intervene.

Plaintiff filed a motion for summary judgment. Defendants in their answer sought dismissal of the complaint only. At the hearing all parties agreed that there was no dispute as to any issues of fact. In order, however, that the record be clear, defendant was permitted to and has filed a formal written motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. At the hearing there were no matters outside the pleadings presented to the court which in any wise affect the decision except the tariff which is referred to in the complaint and answer and submitted to the court by plaintiff. The discussion and conclusion which follows is based solely on the pleadings, affidavits* and appendix attached to plaintiff's motion, the tariff submitted, Interstate Commerce Commission and court decisions relating to the particular matter now before the court.

On May 29, 1962 plaintiff filed with the Commission its tariff MF–I.C.C. No. 16 *in proper form and manner*. The tariff as filed was to become effective June 30, 1962. It was thus filed 32 days prior to its effective date. Protests to the tariff were filed on June 18, 1962 and June 19, 1962. On June 28, 1962, Division 2 of the Commission rejected the tariff and directed that it be returned to the plaintiff. The reason given by the Commission in its Order rejecting the tariff was the following:

"It further appearing, that W. J. Dillner Transfer Company has filed with this Commission its tariff MF–I.C.C. No. 16, which states certain rates, charges, and provisions for transportation services in interstate and foreign commerce for which the said carrier holds no operating authority as required by Section 206 of the Interstate Commerce Act, and that said tariff publication is therefore unlawful and may not be retained in the Commission's files:"

Plaintiff contends that the action of the Commission in rejecting the tariff in the manner in which it did, was arbitrary and capricious and without authority in law. It is contended by plaintiff that the written protests by the intervening defendants were filed with the Suspension Board of the Commission but that the Suspension Board took no action in

* For the purposes of this decision we assume that the facts set forth in plaintiff's affidavits are true.

suspending the tariff. Therefore, says plaintiff, the tariff being in proper form and manner should have been permitted to become effective on June 30, 1962. Further, says plaintiff, it was summarily and arbitrarily treated in the manner in which its application for a hearing was rejected. In support of this charge plaintiff reviews the record which shows that notice of rejection was served on plaintiff June 29th. The next day, June 30th, plaintiff filed a petition for reconsideration and vacation of the Order rejecting the tariff. This application was denied by an Order of the Commission entered July 3, 1962. Plaintiff contends that it was entitled to a hearing on its application for reconsideration of the rejection order. Plaintiff's prayer for relief is that the rejection order of the Commission be vacated and set aside and that the tariff be reinstated, and in the alternative that a hearing be directed.

█ The foregoing is a brief summary of the record made before the Commission and from it the issue seems to be clear. The defendants' contention before this court is that even though the tariff, on the basis of its outward appearance, may have been received for filing, such filing is no bar to its subsequent rejection prior to its effective date, where following the filing of protests by other carriers and answers thereto by plaintiff, the Commission determines that the tariff has no proper place in its files. The reason, say the defendants, is that time and time again the Commission had determined that Dillner had no authority to transport firebrick and ferro alloys. The Commission contends that it has the power to reject a tariff without a hearing which names rates for the interstate transportation of commodities for which the carrier holds no operating authority. The tariff as filed has been exhibited to the court. A decision of this court, W. J. Dillner Transfer Co. v. Interstate Commerce Commission, 193 F.Supp. 823, W.D.Pa.1961, held that Dillner had no authority under its certificate to transport firebrick. In its brief the defendant refers to prior Orders of the Interstate Commerce Commission which show that plaintiff is without authority to transport firebrick or ferro alloys. The several Orders on this subject by the Commission were:

In Docket No. MC–C–1766, W. J. Dillner Transfer Co. Investigation of Operations, by report and order entered April 10, 1959, and reported at 79 M.C.C. 335, 357, the entire Commission found that "the transportation by Dillner of * * * firebrick, is not authorized by its certificate and is unlawful." Its determination was affirmed by the entire Commission by Orders entered September 23, 1959, January 13, 1960, and August 1, 1960. The Commission's actions in that proceeding were sustained by this Court in the case previously cited, W. J. Dillner Transfer Co. v. Interstate Commerce Commission, 193 F.Supp. 823, 826 (W.D.Pa. 1961), aff'd mem. 368 U.S. 6 [82 S. Ct. 16, 7 L.Ed.2d 16] (1961).

In Docket No. MC–21623 (Sub-No. 80), W. J. Dillner Transfer Co., Extension—Ferro Alloys, the Commission, Division 1, in its report and order entered December 22, 1960, found with respect to ferro alloys that "the transportation of these products * * * on pallets by applicant * * * is unlawful." This determination was affirmed by the entire Commission by orders entered May 9, 1961 and September 8, 1961.

In Docket No. MC–C–3447, W. J. Dillner Transfer Co.—Petition for Declaratory Order, the Commission, Division 1, by order entered November 8, 1961, dismissed the plaintiff's petition for declaratory order seeking the interpretation of its certificate to include the right to transport articles that are bundled or packaged for shipment and ferro alloys, among other commodities. The order stated that "most of the issues presented thereby have been fully litigated in Docket No. MC–C–1766 and no further interpretation of the petition-

er's certificate of public convenience and necessity appears at this time to be warranted". Dismissal of plaintiff's petition was affirmed by the entire Commission by order entered April 17, 1962.

In Docket No. MC–21623 (Sub–No. 81), W. J. Dillner Transfer Co. Extension—Firebrick on Pallets, the plaintiff filed an application for a certificate of public convenience and necessity authorizing it to transport firebrick on pallets and ferro alloys, among other commodities, accompanied by its motion to dismiss on the ground that it already held the requisite operating authority. By order entered November 8, 1961, the Commission, Division 1, denied the motion to dismiss as to firebrick, and by Order entered December 4, 1961, it denied the motion as to ferro alloys. Denial of the plaintiff's motion was affirmed by the entire Commission by order entered April 17, 1962.

The plaintiff's application in that proceeding remains pending before the Commission.

It is noticed in regard to the foregoing action of the Commission that in its brief Dillner contends that Tariff MF 16 does not contain the words "firebrick or ferro alloys" except those requiring special equipment to load, unload or transport. However, on examination of the tariff exhibited to the court, pp. 259 thru 273 show "Refractory Products, High Temperature, on pallets," under which is listed "brick, shapes; ore, chrome; Pressed Brick;". Ferro Alloys is likewise listed in Section 6 pp. 49 through 55. At the argument counsel for plaintiff mentioned the rather voluminous document comprising the tariff as filed consisting of 285 pages and that the two commodities mentioned in any event covered but a small portion of the commodity rates filed and therefore the commission was arbitrary in rejecting the whole tariff. Counsel for the Commission, however, in reply stated that Dill-

ner's tariff could be refiled and no doubt would be accepted on deletion of the matters covering commodities for which it had no authority. Plaintiff's burden in this case and other cases of this kind is heavy. It must show that the Commission Orders were invalid as unjust and unreasonable. The prior case decided that point, W. J. Dillner v. Interstate Commerce Commission, supra. This court concludes that the language in the new tariff seeks to establish rates on commodities, i. e. firebrick and ferro alloys which the Commission had determined Dillner was not authorized to transport. It appears that the language used by Dillner was an attempt to circumvent not only the prior ruling of the court but also the Orders of the Commission.

At the hearing Mr. Adamson, counsel for the plaintiff, made the comment that the action of the Commission in the instant case in rejecting plaintiff's tariffs was the first time in the long history of the Commission that a tariff filed in proper form and manner had been rejected in such a summary fashion. Mr. Adamson contends that a tariff once filed and posted becomes as binding and effective as a statute unless it is investigated and a hearing is held in accordance with the law. In support of the proposition just mentioned he cites Chicago, I. & L. Ry. Co. v. International Milling Co., 43 F.2d 93, (8 Cir., 1930), as well as various Orders of the Commission unpublished generally. The cited case holds that when a new tariff names different rates and is published as provided by the statute it is not ineffective because of its failure to state in specific terms that the previously established rate is cancelled. We agree with counsel that a tariff rate lawfully published continues to be the rate until a subsequent tariff is filed. But counsel for plaintiff overlooks a fundamental prerequisite to any tariff becoming effective. For instance, the statute with which we are concerned is Pt. II of the Interstate Commerce Act as of August 9, 1935 and as amended September 18, 1940, 49 U.S.C.A. § 301 et seq. By this statute Congress

established a comprehensive plan for regulating the carriage of goods by motor truck in interstate commerce. Service Storage & Transfer Co. v. Virginia, 359 U.S. 171, 79 S.Ct. 714, 3 L.Ed.2d 717, 1959. It required both common carriers and contract carriers to secure certificates of convenience and necessity from the Interstate Commerce Commission, Sections 306 through 309. Section 306 (1) with certain exceptions prohibited a common carrier by a motor vehicle to engage in any interstate commerce on any highway "unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission." Section 316(b) directs common carriers of property by motor vehicle to provide safe and adequate service, equipment and facilities, etc., and "to establish, observe, and enforce *just and reasonable rates, charges, and classifications*".

Section 317 is entitled "Tariffs of common carriers by motor vehicle— (a) [f]iling, posting, and publication". The section directs that the carrier file with the Commission and print and keep open to public inspection, tariffs showing all the rates, etc. The last two sentences of Section 317 are important to the decision in this case. They read:

"The tariffs required by this section shall be published, filed, and posted in such form and manner, and shall contain such information, as the Commission by regulations shall prescribe; and the Commission is authorized to reject any tariff filed with it which is not in consonance with this section and with such regulations. Any tariff so rejected by the Commission shall be void and its use shall be unlawful."

We think that a glance at the cited sections of the statute points to the illogic in plaintiff's position. A tariff establishes rates for transportation of goods which are embraced within the certificate of public convenience and necessity issued to the carrier by the Commission. A tariff not based on authority is a nulli-

ty. In the instant case plaintiff is seeking by a tariff to validate an authority it lacks, i. e., the movement of firebrick and ferro alloys. As indicated, plaintiff must concede that it has no authority for firebrick and ferro alloys. The Commission construes the Tariff M.C. 16 as including rates for such commodities. This it was privileged to do. In Service Storage & Transfer Co. v. Virginia, supra, the Supreme Court says at p. 177 of 359 U.S. at p. 718 of 79 S.Ct.:

"It appears clear that interpretations of federal certificates of this character should be made in the first instance by the authority issuing the certificate and upon whom the Congress has placed the responsibility of action. The Commission has long taken this position." (citing cases)

The Commission having found on examination of plaintiff's certificate that it was without authority to carry the two commodities it must follow that it was authorized to reject the tariff because it was not in consonance "with this section and with such regulations."

Returning for discussion purposes to counsel's statement that this is the first time in the history of the Commission that a tariff filed in proper form and manner has been summarily returned to the carrier without being retained in the Commission's files and a hearing given, it appears correct to say that there is no square cut decision of any court ruling on the authority of the Commission to reject the tariff as it did do in the instant case. A short answer to plaintiff's contention in that respect is that if an authoritative decision is lacking then this is the appropriate case in which to correct the deficiency. Common sense would seem to compel the conclusion that a tariff must be founded upon a valid certificate to carry the commodity described in the tariff. The Interstate Commerce Commission is an administrative body but exercises quasi-judicial duties. Its functions are defined by statutes. It exercises judgment and discretion. It may act of its own motion in certain instances and it may be

petitioned to move by those having rights under the Act. Int. Commerce Commission v. United States of America ex rel. Humboldt Steamship Co., 224 U.S. 474, 484, 32 S.Ct. 556, 56 L.Ed. 849, 1912.

The Congress has delegated regulatory powers to the Commission under which it has regulated transportation, etc., since 1887. In courts of law as well as in administrative agencies decided matters become res judicata. Thereafter, when issues are raised which have been the subject of prior final decisions they may be treated in what would appear to be summary fashion. Due process of law does not require an administrative body any more than a court to retry issues which have been once decided. To compel the Commission to retain its files on every tariff and call a hearing thereon irrespective of whether it is based on a certificate would simply be senseless and bog the Commission down in useless time consuming effort. This court agrees with the Commission that Dillner Tariff MF–16 is an attempt to secure authority to haul firebrick and ferrous alloys. What the Commission denied cannot be secured by rearranging language in the hope that in one way or another the previously denied authority will be approved.

No doubt, because of the wording of Section 317, the precise question decided here has not been often the subject of litigation before a court. Research has failed to disclose an exact parallel court decision but nevertheless the Commission has asserted in prior cases the power which is used here. In Acme Fast Freight v. United States, 30 F.Supp. 968, 974 (S.D.N.Y.1940), the court referred to the language in Section 217(a) in saying that a tariff

"* * * may be rejected by the Commission when they are 'not in consonance with this section.'"

When the case was before the Commission, 17 MCC 549 (1939), in speaking of a tariff which is not in consonance, etc., the Commission said:

"If they are not required by statute to be filed, we are not bound to ac-
cept them, and if we should accept them upon a misapprehension, or inadvertently without examination or without determination as to whether they are proper subjects for filing, we may later reject them and strike them from our files."

But the case is not entirely a binding precedent because the record shows that in fact hearings were held. It should be noticed that the decision of the Commission was afterward affirmed by the Supreme Court of the United States, 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993, October Term, 1939, and there is no language in the Supreme Court's opinion which could be in any way construed as critical of the language of the Commission.

In the briefs of counsel, United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373, 1956 is cited. In this case the issue involved the interpretation of the Federal Power Commission's authority under the Natural Gas Act, 15 U.S.C. § 717 et seq. However, as counsel say, the Natural Gas Act was modeled under the provisions of the Interstate Commerce Act. See Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037, 1942. The Supreme Court in the Mobile case used language which this court believes is applicable to the instant decision when it says, 350 U.S. p. 347, 76 S.Ct. p. 382:

"There can be no doubt of the authority of the Commission to reject the unauthorized filing under its general powers to issue orders 'necessary or appropriate to carry out the provisions of this Act,' § 16, and its failure to do so and its order 'permitting' the new rates to become effective were in error."

Likewise, the Interstate Commerce Commission, it seems to us was empowered to issue the Order it did in the instant case under its general powers to make all necessary orders, to administer, execute and enforce all provisions of the Interstate Act. Section 204(a) (6) of the Act, 49 U.S.C. § 304(a) (6).

## ORDER

And Now, this 8th day of February, 1963, for the reasons mentioned in the foregoing opinion, the plaintiff's motion for summary judgment in its favor is denied.

And Further, defendants' motion for judgment on the pleadings is granted and the Clerk is directed to enter judgment against plaintiff, W. J. Dillner Transfer Company, and in favor of the United States and the Interstate Commerce Commission, defendants.