ANDREW G. NELSON, Inc., Plaintiff,
v.
UNITED STATES of America and Interstate Commerce Commission,
Defendants,
and
Advance Transportation Co., Inc., et al.,
Intervening Defendants.
Civ. A. 55–C–2302.

United States District Court
N. D. Illinois, E. D.
June 13, 1956.

Paul E. Blanchard, Washington, D. C., William F. Price and Victor L. Lewis, Chicago, Ill., for plaintiff.

Robert Tieken, U. S. Atty., Chicago, Ill., James E. Kilday and James H. Durkin, Dept. of Justice, Washington, D. C., for the United States.

Robert W. Ginnane, Gen. Counsel, James Y. Piper, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Comm.

Eugene L. Cohn and Bernard G. Colby, Chicago, Ill., for certain intervenors.

Before FINNEGAN, Circuit Judge, and LA BUY and PERRY, District Judges.

FINNEGAN, Circuit Judge.

Andrew G. Nelson, Inc., plaintiff, invoked a statutory three-judge district court, 28 U.S.C. §§ 1336, 2284, 2325, to enjoin and annul a cease and desist order of the Interstate Commerce Commission, dated March 3, 1955, in Docket No. MC–C–1610, reported in 63 M.C.C. 407 (1955). The challenged order is a culmination of hearings initiated by the Commission under § 204(c) and § 212(a) of the Interstate Commerce Act,[1] to investigate plaintiff's operations under its permit, issued June 18, 1951, authorizing the transportation, over irregular routes of: "(N)ew and used store fixtures, new and used household goods and stock in trade of drugstores." By its own initial order the Commission made this corporate plaintiff a respondent in those proceedings instituted for the purpose of determining whether Andrew G. Nelson, Inc., is and was engaged in the transportation of commodities outside the scope of its operating authority, in violation of § 209(a) of the Act,[2] or "of

---

[1] 49 U.S.C.A. § 304(c), 54 Stat. 922, as amended September 18, 1940; 49 U.S. C.A. § 312(a), 54 Stat. 924, as amended Sept. 18, 1940.

[2] 49 U.S.C.A. § 309(a) (1), 64 Stat. 575, as amended Sept. 1, 1950.

any requirement, restriction, term, or condition of * * * (its) permit * * *'' From the record made before the Commission it is established that the plaintiff corporation was represented by several counsel during an adversary proceeding before an examiner, at which other attorneys appeared on behalf of several intervenors.

Earlier, in March, 1942 under No. MC1194, plaintiff's predecessor, Andrew G. Nelson an individual, had been authorized by the Commission to conduct business as a contract carrier by motor vehicle of the commodities mentioned and already quoted above in connection with the June, 1951 permit. Nelson's 1942 permit (No. MC1194) was issued under the "grandfather" clause in the first proviso of § 209(a)(1), Part II, of the Act. Later, sometime in 1951, Nelson incorporated and, with Commission approval, his permit was transferred to the corporate plaintiff before us.

Plaintiff participated in the challenged administrative proceedings held by the Commission during which the Bureau of Inquiry and Compliance, Interstate Commerce Commission, introduced evidence establishing that during a period in 1953 this carrier transported in interstate commerce, commodities from consignors, none of whom were drugstores, to consignees "whose business is as indicated. Numerous and varied canned or packaged grocery items to grocery stores or warehouses; dry and liquid cream and fruit juices to food manufacturers; beer and wines to liquor distributors; 100-pound bags of dry glue to a company whose business is not stated of record; candy to a candy wholesale candy distributor; dry milk to a distributor of that product; malted milk powder and milk food to a manufacturer of drugs and dietetic foods; and automobile batteries to a general merchandising company * * *.'' 63 M.C.C. 407, 412.

Proceeding before us by way of a complaint for a declaratory judgment, plaintiff asks, in substance, that we review the Commission's order by measuring it with constitutional yardsticks. No problem of exhausting administrative remedies is involved. Plaintiff insists that by its order, now in issue, the Commission whittled down the operating permit originally issued under the "grandfather clause." But the Commission was investigating plaintiff's compliance or noncompliance with permit No. MC1194, as is disclosed *inter alia* by this statement reported by the Examiner:

"The sole issue herein is thus explicit and requires a determination of the extent of the authority granted by the commodity description '*stock* in trade of drugstores.' None of the parties claim that such description is patently ambiguous, and ambiguity may not be assumed merely from the fact that the Bureau and interveners are in disagreement with respondent as to the meaning of the description. In considering the issue thus presented neither the operations of respondent prior to the 'grandfather' date, nor the Commission's intentions with respect thereto in issuing the permit, are of any importance."

When the matter moved up to the level of Division 5 it was pointed out (63 M.C.C. 407, 409): "(W)e agree with the contention of the parties and the examiner's conclusions that there is no such patent ambiguity in the permit as to warrant our going back of it and giving consideration to events prior to its issue." We think the Commission acted within its statutory power and for that reason refuse to disturb the challenged order.

Having examined the pleadings, exhibits, record made before the Commission, after hearing oral arguments of counsel for both sides, receiving evidence on the matter of damages, and being fully advised in the premises, we find and conclude as follows:

### Findings of Fact

1. Plaintiff, Andrew G. Nelson, Inc., an Illinois corporation, operates as a motor contract carrier in ten North Central States under authority of Permit No.

MC1194, which was issued on March 13, 1942, by the Interstate Commerce Commission (hereinafter called "the Commission") to plaintiff's predecessor in interest (Andrew G. Nelson, as individual), and was authorized to be transferred to plaintiff by order dated March 12, 1951. A new permit was issued to plaintiff on June 18, 1951.

2. The aforesaid permits authorized plaintiff and its predecessor to transport *new and used store fixtures, new and used household goods,* and *stock* in trade of drug stores.

3. Pursuant to said application, the Interstate Commerce Commission in its Docket MC–1194, under date of February 14, 1938, issued its so-called compliance order reciting in part as follows:

"After due investigation:

"It appearing, That applicant in accordance with the requirements of Section 209, Motor Carrier Act, 1935, including due service, made application for a permit to operate as a contract carrier by motor vehicle according to the specification *set forth as appended on the reverse side hereof or attached hereto,* and made a part of this order, and that the said applicant or predecessor in interest was in bona fide operation in such manner on July 1, 1935, and has so operated since that time; and the Commission so finding;"

The specification set forth on the reverse side of said compliance order and referred to in the foregoing quotation of said order reads as follows:

"The business of applicant, as authorized by the order of which this is a part, in interstate or foreign commerce as a contract carrier by motor vehicle of the commodities indicated, over irregular routes, is as specified below:

"*New and used store fixtures, new and used household* goods, and *stock* in trade of drug stores,

"Between points and places in Illinois, Indiana, Iowa, Kentucky, Mich-igan, Minnesota, Missouri, Nebraska, Ohio, and Wisconsin."

The foregoing finding of the Commission made in said compliance order of February 14, 1938, has never been changed and remains in effect.

4. The Interstate Commerce Commission issued to Andrew G. Nelson under date of March 13, 1942, a permit to engage in interstate or foreign commerce as a contract carrier by motor vehicle, a portion of which permit reads as follows:

"It Is Further Ordered, That the transportation service to be performed by the said carrier in interterstate or foreign commerce shall be as specified below:

"*New and used store fixtures, new and used household* goods, and *stock* in trade of drug stores, over irregular routes,

"Between points and places in Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, Nebraska, Ohio, and Wisconsin."

5. That the aforesaid permit dated March 13, 1942, was transferred to plaintiff in the manner and form required by law, and the Interstate Commerce Commission on June 18, 1951, reissued such permit to plaintiff making no change therein except the substitution of plaintiff's name for the name of the original holder.

6. Plaintiff is and has been since 1951 engaged in the transportation of commodities in Interstate Commerce as a contract carrier, pursuant to authority granted by said permit.

7. By order entered January 21, 1954, the Commission, Division 5, instituted an investigation proceeding in its Docket No. MC–C–1610 with a view to determining whether Andrew G. Nelson, Inc. is and has been engaged in the transportation of commodities not within the scope of its operating authority, in violation of section 209(a) (1) of the Interstate Commerce Act, 49 U.S.C.A. § 309(a) (1), or of any requirement, restriction, term, or condition of its per-

mit. The order further provided for the issuance of such orders and the taking of such other action as the facts and circumstances may appear to warrant.

8. A hearing was held by a hearing examiner of the Commission in May, 1954, at Chicago, Illinois.

9. The Bureau of Inquiry and Compliance of the Commission was joined in its support of the investigation by 19 motor carriers, 3 associations of motor carriers, and the Class I rail carriers in western territory.

10. During the period July 31, 1953, to December 7, 1953, the respondent transported in interstate commerce the following commodities from consignors, none of whom were drugstores, to the consignees whose business is as indicated: Numerous and varied canned or packaged grocery items to grocery stores or warehouses; dry and liquid cream and fruit juices to food manufacturers; beer and wines to liquor distributors; 100-pound bags of dry glue to a company whose business is not stated of record; candy to a wholesale candy distributor; dry milk to a distributor of that product; malted milk powder and milk food to a manufacturer of drugs and dietetic foods; and automobile batteries to a general merchandising company.

11. Plaintiff did not deny that it had engaged in the aforesaid transportation, but contended that the description "*stock in trade of drug stores*" permits transportation from and to any consignor and consignee, provided that the commodities transported are the same as those sold in drugstores.

12. The hearing examiner held that this argument was without merit because it was based on the false premise that the plaintiff's permit authorizes the transportation of "commodities described as stock in trade of drug stores." The hearing examiner further found that the commodity description under consideration is merely a different but equally effective manner of stating "drugstores' *stock* in trade"; that the limitation as thus imposed by the commodity descrip-

tion is not restricted to deliveries to drugstores but also includes goods which are earmarked for eventual delivery to and sale in a drugstore; and that, accordingly, plaintiff's past and continued transportation in excess of that granted by its permit, as described in Finding of Fact 6, is in violation of section 209 (a) (1) of the act and should be discontinued immediately.

13. The hearing examiner further held that there is no such patent ambiguity in the commodity description "*stock* in trade of drugstores" in the permit as to warrant consideration of events prior to issuance to plaintiff's predecessor.

14. The examiner served his recommended report and order, proposing the issuance of a cease and desist order, on September 22, 1954.

15. Plaintiff filed exceptions to the examiner's recommended report and order on October 29, 1954.

16. The Commission, Division 5, issued its report (63 M.C.C. 407) on March 17, 1955, in which it found that, except as modified in its report, the examiner had adequately stated the facts and the issues, and it adopted his report and findings except as modified.

17. In ruling against plaintiff's exceptions and upholding the hearing examiner, Division 5, found that there is no such patent ambiguity in the permit as to warrant giving consideration to events prior to its issuance; that the examiner's statement and discussion of the issue is sound as regards the phrase "*stock* in trade of drugstores"; that the term "*new and used store fixtures*" is adequately defined in Shelinsky Common Carrier Application, 52 M.C.C. 349, at 359 and in Mural Trucking Service Interpretation of Certificate, 63 M.C.C. 47; that plaintiff's contention with respect to the meaning of "*household goods*" is totally without merit; that any article which is a part of the stock in trade of a mercantile establishment does not for that reason come within the meaning of "household goods," except as an incident

of the movement of such establishment from one location to another, citing Commission decisions; that no inconsistency exists between the "intended use" test and the examiner's statement that "*stock in trade of drugstores*" means stock kept for sale purposes by one who operates a drugstore; that the equivalent of "*stock in trade of drugstores*" is "drugstores' stock in trade"; that the important determination is what transportation was intended to be authorized; that plaintiff is authorized to transport the commodities described in its permit provided such commodities at the time of shipment are definitely intended for use as "store fixtures, household goods, or stock in trade of drugstores"; that the commodity limitation in plaintiff's permit does not limit the class or type of persons with whom it may contract, as would a "Keystone" restriction as described in Keystone Transp. Co., Contract Carrier Application, 19 M.C.C. 475; that the "intended use" test has never been abandoned by the Commission; and that an appropriate order requiring plaintiff to cease and desist from the operations found to be unauthorized would be entered.

18. On March 17, 1955, the Commission issued its order requiring plaintiff to cease and desist from the operations found in the report of Division 5 to be unauthorized and unlawful.

19. Plaintiff filed a petition for reconsideration and oral argument on May 11, 1955; replies to the petition were filed on June 15, 1955; and the entire Commission denied the petition by order of November 15, 1955.

20. The Court adopts as its own the findings of fact made by the Commission, Division 5, as shown in its report on March 17, 1955.

### Conclusions of Law

1. The Commission had jurisdiction to hear and determine the issues involved in the proceeding which resulted in the order here under attack.

2. This Court has jurisdiction of the action herein and the parties hereto.

3. The plaintiff was accorded a full, fair and legal hearing.

4. The findings made by the Commission, Division 5, as set forth in its report of March 17, 1955, which the Court had adopted as its own, are supported by substantial evidence of record and are adequate to support the order issued by the Commission.

5. The Commission did not exceed its authority in issuing its said order.

6. The order of the Commission under attack in this cause is a legal and valid order.

7. The injunction prayed for by the plaintiff should be denied and the suit dismissed.

8. Let a decree be entered in accordance with the conclusions expressed herein.

PERRY, District Judge (dissenting).

In the proceedings initiated by the Interstate Commerce Commission and ending in the cease and desist order dated March 3, 1955, herein sought to be enjoined and annulled, the Commission, in effect, sought to modify or curtail by retroactive interpretation the permit of plaintiff corporation, an interstate motor contract carrier and successor in interest to Andrew G. Nelson whose permit was issued under the "grandfather" clause in the first proviso to Section 209 (a) (1) of the Interstate Commerce Act, 49 U.S.C.A. § 309(a) (1).

The so-called "grandfather" clause reads, in part, as follows:

"Except as otherwise provided in this section and in section 310a of this title, no person shall engage in the business of a contract carrier by motor vehicle in interstate or foreign commerce on any public highway * * * unless there is in force with respect to such carrier a permit issued by the Commission, authorizing such person to engage in such business: *Provided*, That, subject to section 310 of this title, if any such carrier or a predecessor in interest was in bona fide operation as

a contract carrier by motor vehicle on July 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time * * * the Commission shall issue such permit, without further proceedings, if application for such permit was made to the Commission as provided in subsection (b) of this section * * *."

By its order of February 14, 1938 in "grandfather" case No. MC-1194, the Interstate Commerce Commission found that Andrew G. Nelson (plaintiff's predecessor) had made application for a permit to operate as a contract carrier by motor vehicle according to certain specifications, viz.:

"The business of applicant, as authorized by the order of which this is a part, in interstate or foreign commerce as a contract carrier by motor vehicle of the commodities indicated, over irregular routes, is as specified below:

New and used store fixtures, new and used household goods, and stock in trade of drug stores,

Between points and places in Illinois, Indiana, Iowa, Kentucky, Michigan, Minnesota, Missouri, Nebraska, Ohio, and Wisconsin",

and then the Order added: "and that the said applicant or predecessor in interest was in bona fide operation *in such manner* (italics supplied) on July 1, 1935, and has so operated since that time; and the Commission so finding." That finding has never been changed, and remains in effect. In other words, the Commission's finding of fact was that the business of applicant during the "grandfather" period had been as a contract carrier of commodities described as new and used store fixtures, new and used household goods, and stock in trade of drug stores.

Now, let us turn to a consideration of some of the informational data that was on file in 1936 as a part of the record before the Commission in the "grandfather" case; data describing applicant's operations during the "grandfather" period, and on which, in part, at least, the Commission presumably based its administrative finding of fact in the order of February 14, 1938, just mentioned. Referring to plaintiff's exhibits, put into evidence herein by agreement of attorneys, we find certified, photostatic copies of the following documents:

"(a) Property Carrier Application" dated December 30, 1935 and made by Andrew G. Nelson. An exhibit, attached to and a part of the Application, contains the following statement by applicant:

"Operations involve transportation over various routes, between various municipalities, on various highways, of store fixtures and miscellaneous merchandise, and household goods of employes, for Walgreen Co., in connection with the opening, closing and remodeling of stores."

(b) Statements made by Andrew G. Nelson when he appeared before Supervisor John G. Petritz on November 9, 1936, and reduced to writing and signed by him on November 11, 1936—paragraphs 7 and 8 whereof read as follows:

"7. That he is an interstate contract carrier of property for the Walgreen Company and for it alone.

"8. That he hauls to and from Walgreen Retail Stores located within 600 miles of Chicago. That said transportation has to do with the opening, the remodeling, and/or the closing of Walgreen retail stores, the commodities so transported are usually store fixtures and equipment and merchandise for the opening stock. That the household goods hauled are only for employees of the Walgreen Company and that payment for said transportation is taken care of by the Walgreen Company. This movement amounts to approximately ten trips per year. That his equipment usually returns empty, except for old

store fixtures and equipment and occasionally a transfer of stock for Walgreen Company."

(c) Affidavit, dated November 12, 1935, of W. E. Henry who states that he "is now, and has been for a number of years, engaged in the occupation of traffic manager for Walgreen * * * and that as such traffic manager it is his duty to, among other things, arrange and contract for, and order and supervise, the transportation of store fixtures and miscellaneous merchandise belonging to said Walgreen Co., and household goods of certain of said company's employes."

Affiant Henry further says "that Andrew G. Nelson * * * is on this date, and has been continuously since the year A.D. 1919, under contract with said Walgreen Co., to transport by motor vehicle over various routes, between various municipalities, on various highways, store fixtures and miscellaneous merchandise, and household goods of employes, for Walgreen Co., in connection with the opening, closing and remodeling of stores, all over such state and federal highways within a radius of approximately six hundred (600) miles from Chicago, Illinois, as may be necessary to reach a Walgreen Co., drug store."

(d) Affidavit, dated November 10, 1936, of David Harding who states that he "is now and has been since 1920 engaged in the occupation of warehouse foreman for Andrew G. Nelson. * * * That it is his duty among other things to check loads, supervise the transportation of store fixtures, miscellaneous merchandise and household goods belonging to Walgreen Company or their employees."

Affiant Harding further says "that he has ordered the various motor vehicles over various routes * * * containing store fixtures, miscellaneous merchandise and household goods belonging to Wal-

green Company or their employees, in connection with the opening, closing and remodeling of stores. * * * Affiant further deposes and says the type of business done by Andrew G. Nelson * * * has not materially changed since his employment in 1920."

(e) Affidavit, dated November 10, 1936, of Jacob Jacoby who states that "he is now and has been since 1930 engaged in the occupation of chauffeur for Andrew G. Nelson, doing business as Nelson Warehouse & Express Co. * * * That it is his duty among other things to drive various vehicles containing store fixtures, miscellaneous merchandise and household goods belonging to Walgreen Company or their employees."

Affiant Jacoby further states "that he has driven various motor vehicles over various routes * * * containing store fixtures, miscellaneous merchandise and household goods belonging to, Walgreen Company or their employees, in connection with the opening, closing and remodeling of stores * * * and says the type of business done by Andrew G. Nelson as Nelson Warehouse & Express Co. * * * has not materially changed since his employment in 1930."

(f) Affidavit, dated November 10, 1936, of Robert Stewart who states that "he is now and has been since 1930 engaged in the occupation of chauffeur for Andrew G. Nelson, doing business as Nelson Warehouse & Express Co. * * * That it is his duty among other things to drive various vehicles containing store fixtures, miscellaneous merchandise and household goods belonging to Walgreen Company or their employees. * * *"

Affiant Stewart further states that he has "driven various motor vehicles over various routes, between various municipalities * * * containing store fixtures, miscellaneous

merchandise and household goods belonging to Walgreen Company or their employees, in connection with the opening, closing and remodeling of stores all over such states and federal highways within the radius of approximately six hundred (600) miles from Chicago, Illinois * * * that the type of business done by Andrew G. Nelson as Nelson Warehouse & Express Co. * * * has not materially changed since his employment in 1930."

Applicant Nelson, having established the fact that he was in bona fide operation as a contract carrier by motor vehicle on July 1, 1935, and having been accordingly issued a permit by the Commission pursuant to the "grandfather" clause, was granted by statute the right and authority to continue the grandfather operations in the same pattern. The Commission has no more authority or power now to specify, limit or diminish the scope of the operations authorized under the "grandfather" permit here involved than it had in 1942 when the permit was issued.

To permit the Commission to modify or restrict by retroactive interpretation a permit issued under circumstances such as those in the instant case would be to give the permit a protean quality, subjecting the holder thereof to possible deprivation of property without due process.

The power given the Interstate Commerce Commission by Congress to make regulations is one which is limited to the enforcement and application of the statute and to the carrying into effect of the will of Congress as expressed by the statute. It was never intended that the Commission be authorized to usurp the legislative function of Congress in any manner—whether it be done directly, by the promulgation of regulations which are not in harmony with the statute, or done indirectly by an interpretation of the statute, amounting to an amendment thereof. In the case at hand the Commission is, in effect, amending the statute.

Absent any charge and supporting proof of fraud in the inducement of the issuance of a permit, the findings of the Commission in the "grandfather clause" proceedings here involved were and are final and cannot be changed or modified; nor can new and different findings be made, based upon the same facts.