**NORTH CENTRAL TRUCK LINES, INC.,**
a Corporation, Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants,**

and

**Dodds Truck Lines, Inc., et al.,**
**Intervenor-Defendants.**

**Civ. A. No. 73CV61–C.**

United States District Court,
W. D. Missouri,
Central Division.

June 20, 1974.

Tom B. Kretsinger, Warren H. Sapp, III, Kretsinger & Sapp, Kansas City, Mo., for plaintiff.

John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and J. Whitfield Moody, First Asst. U. S. Atty., W. D. Mo., for United States.

Richard H. Streeter, Atty., I.C.C., Washington, D. C., and J. Whitfield Moody, First Asst. U. S. Atty., W. D. Mo., for I.C.C.

Before GIBSON, Circuit Judge, BECKER, Chief District Judge, and HUNTER, District Judge.

MEMORANDUM AND ORDER

GIBSON, Circuit Judge.

Plaintiff, North Central Truck Lines, Inc. (North Central), in this action heard by a three-judge district court pursuant to 28 U.S.C. § 2325 seeks to set aside and annul a report and order of the Interstate Commerce Commission (the Commission).[1] We deny the relief requested.

On August 7, 1969, the Commission instituted an investigation of North Central pursuant to 49 U.S.C. §§ 304(c) and 312(a) in order to see whether North Central, an interstate motor carrier, was hauling goods not authorized by the terms of its certificate, No. MC–124148, which as pertinent here allowed North Central to transport only "stock in trade of drug stores." During February, 1970, North Central filed a petition with the Commission seeking to reopen one of its predecessor's (Andrew G. Nelson's) grandfather proceeding and to modify the certificate. The Commission consolidated the investigation and modification proceedings, and an oral hearing commenced on October 21, 1970. The Commission on March 30, 1973, issued a cease and desist order against North Central for hauling commodities that were not stock in trade of drug stores and refused to reopen the grandfather proceeding. North Central filed this action to set aside that cease and desist order and to reopen the grandfather proceeding.

North Central is the holder of a certificate, No. MC–124148, which is identical as herein pertinent to the permit issued to Andrew G. Nelson on March 13, 1942. Nelson incorporated in 1951, and the Commission issued an identical permit to Andrew G. Nelson, Inc. The permit's phrase, "stock in trade of drug stores," was interpreted by the Commission in Andrew G. Nelson, Inc., 63 M.C. C. 407 (1955); by a three-judge district court in Andrew G. Nelson, Inc. v. United States, 150 F.Supp. 181 (N.D.Ill. 1956); and on appeal by the Supreme Court in Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958), *rehearing denied,* 356 U.S. 934, 78 S.Ct. 770, 2 L.Ed.2d 763 (1958). On March 25, 1963, Andrew G. Nelson, Inc., became North Central Truck Lines, Inc., and in July, 1968, Mrs. Arva Bilyeu purchased all of the outstanding stock of North Central. Mrs. Bilyeu became seriously ill in 1969 after she purchased North Central, and her husband, Mr. Bill Bilyeu, was allowed by the Commission to acquire control of North Central. Bilyeu—Lease—North Central Truck Lines, Inc., 109 M. C.C. 834 (1972).

Bilyeu of North Central has argued before the Commission and here that "he is unable clearly to define a drug store and that he need not make an inquiry or investigation prior to accepting a shipment in order to determine that the shipment is intended to become the stock in trade of a drug store." North Central Truck Lines, Inc., 117 M.C.C. at 188 (footnote omitted). This argument is no longer viable, for the Supreme Court has decided this precise legal issue. In *Nelson, Inc.,* the Court approved the Commission's finding that the "intended use" test should be applied to define "stock in trade of drug stores" and specifically stated that "the goods transported [must] be intended for use by a drug store as part of its stock in trade." Andrew G. Nelson, Inc. v. United States, *supra,* 355 U.S. at 559, 78 S. Ct. at 499. In applying the Court's decision in this investigative proceeding, the Commission stated:

> North Central is limited to the transportation of commodities which when transported are part of the goods or stock kept for sale purposes by one who operates a drug store or the drug department of a retail store or which when transported are intended to become part of such goods or stock.

1. That report and order is published as North Central Truck Lines, Inc., 117 M.C.C. 180 (1972).

This includes goods which at the time they are transported are earmarked for eventual delivery and sale in drug stores.

117 M.C.C. at 190.

In stating the above legal conclusion, the Commission has clearly followed the Supreme Court's decision in *Nelson, Inc.*

Collateral estoppel dictates that we, the Commission, and the parties are bound by the Supreme Court's interpretation of the phrase "stock in trade of drug stores" in Andrew G. Nelson, Inc. v. United States, *supra*. Professor Moore defines collateral estoppel, which applies to this case:

> Where there is a second action between parties, or their privies, who are bound by a judgment rendered in a prior suit, but the second action involves a different claim, cause, or demand, the judgment in the first suit operates as collateral estoppel as to, but only as to, those matters or points which were in issue or controverted and upon the determination of which the initial judgment necessarily depended.

1B Moore's Federal Practice ¶ 0.441[2] at 3777 (1974).

■ In order to invoke collateral estoppel, there must be identity or privity of parties,[2] mutuality,[3] and a different claim, cause, or demand in the second action.[4] Also, "some matter litigated in the former suit [must be] determinative of a matter in controversy in the second suit." United Shoe Machinery Corp. v. United States, 258 U.S. 451, 459, 42 S.Ct. 363, 366, 66 L.Ed. 708 (1922).

■ Further, according to Fed.R. Civ.P. 8(c), a party relying on *res judicata* must plead that doctrine affirmatively. It is also well established that collateral estoppel is an affirmative defense that must be pled according to Fed.R.Civ.P. 8(c). *E. g.*, In Re Las Colinas, Inc., 426 F.2d 1005, 1015 n. 18 (1st Cir. 1970); Federal Savings & Loan Insurance Corp. v. Szarabajka, 330 F.Supp. 1202, 1205 (N.D.Ill.1971). The joint answer of the intervening defendants set forth the doctrine of *res judicata* affirmatively and cited Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958). Although it would have been more precise to plead collateral estoppel in this case, at least the Restatement of Judgments has said that the doctrine of *res judicata* includes merger, bar, collateral estoppel, and direct estoppel. Restatement of Judgments, Introductory Note, c. 3 at 160 (1942) *quoted* in Lawlor v. National Screen Service Corp., *supra*, 349 U.S. at 326 n. 6, 75 S.Ct. 865. For the purposes of Fed.R.Civ.P. 8(c), we think that in this context it can be fairly said that the pleading of *res judicata* encompassed the doctrine of collateral estoppel and adequately apprised plaintiff of defendants' affirmative defense.

■ In this case, the Supreme Court's interpretation of "stock in trade of drug stores" in Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958), collaterally estops North Central from litigating the legal interpretation of that phrase before this court. First, North Central is in privity with Andrew G. Nelson, Inc., the plaintiff in the first suit, since Andrew G. Nelson, Inc., is a predecessor to the same certificate litigated in this action. The plaintiffs in both actions are in privity, for North Central is a successor to the same certificate once held by Andrew G. Nelson, Inc. *See* 1B Moore's Federal Practice ¶ 0.411[12]

2. Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); Canaan Products, Inc. v. Edward Don & Co., 388 F.2d 540, 542 (7th Cir. 1968); 1B Moore's Federal Practice ¶ 0.441 [3] at 3781 (1974).

3. Canaan Products, Inc. v. Edward Don & Co., *supra* at 542; 1B Moore's Federal Practice ¶ 0.441 [3] at 3781 (1974).

4. Lawlor v. National Screen Service Corp., *supra*, 349 U.S. at 326, 75 S.Ct. 865; 1B Moore's Federal Practice ¶ 0.441 [2] at 3777 (1974), *quoted supra*.

at 1664–80 (1974).[5] Defendants, the United States and Commission, are identical parties in both actions.

■ Second, mutuality exists in this case. Mutuality requires that the party invoking collateral estoppel must have been bound by a determination in the first suit if it would have been decided adverse to him. Bigelow v. Old Dominion Copper Mining and Smelting Co., 225 U.S. 111, 127, 32 S.Ct. 641, 56 L.Ed. 1009 (1912); 1B Moore's Federal Practice ¶ 0.412 [1] at 1801 (1974). The United States and the Commission would have been bound by the Supreme Court's decision in *Nelson, Inc.*, if the Court would have accepted Andrew G. Nelson, Inc.'s argument of the definition of "stock in trade of drug stores." [6]

Third, the instant case involves a different claim, cause, or demand than was present in the first case. The second and instant case was commenced by the Commission pursuant to 49 U.S.C. §§ 304(c) and 312(a) in order to investigate whether North Central was hauling commodities that were not "stock in trade of drug stores." Although the legal issue of what constitutes "stock in trade of drug stores" has been decided by the Court in *Nelson, Inc.*, new factual claims, this time involving North Central, are involved. North Central argues that *res judicata* is not applicable, since the investigation commenced by the Commission in 1969 is a "new claim or demand, based upon new facts" and since the application of *res judicata* would have demanded the dismissal of the Commission's investigation proceeding. We agree that *res judicata* is inapplicable, since the Commission's investigation in 1969 was based this time on a new claim involving the violations by North Central instead of Andrew G. Nelson, Inc. However, since there is a different claim involved in this case, collateral estoppel, instead of *res judicata*, is the proper legal doctrine to apply to the issue of the legal interpretation of "stock in trade of drug stores." Lawlor v. National Screen Service Corp., *supra*, 349 U.S. at 326, 75 S.Ct. 865; 1B Moore's Federal Practice ¶ 0.405[3] at 631–34 and ¶ 0.441[2] at 3777 (1974).

Fourth, the same matter has been litigated in the former suit and is determinative of a legal interpretation in controversy in this second suit. The interpretation of "stock in trade of drug

---

5. In Bernhard v. Bank of America National Trust & Savings Ass'n, 19 Cal.2d 807, 811, 122 P.2d 892, 894 (1942), then Justice Traynor defined "privy" as "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase."

6. In Bernhard, Justice Traynor saw "no compelling reason" for the party asserting *res judicata* or collateral estoppel to have been a party or in privity with a party to the earlier litigation. He also stated that "[n]o satisfactory rationalization has been advanced for the requirement of mutuality." Bernhard v. Bank of America National Trust & Savings Ass'n, 19 Cal.2d 807, 812, 122 P.2d 892, 895 (1942). *See also* B. Currie, Mutuality of Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281 (1957); B. Currie, Civil Procedure: The Tempest Brews, 53 Calif.L.Rev. 25 (1965). Even under the more rigid and established standards, however, collateral estoppel clearly applies in this case. North Central, as purchaser of the same permit litigated in both actions, is in privity with Andrew G. Nelson, Inc. Also, the United States and ICC, the parties asserting collateral estoppel as defendants, are the same parties involved in the first suit. In Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 327, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the Supreme Court reviewed the whole area of mutuality of estoppel, but particularly in relation to the viability of mutuality "where a patentee seeks to relitigate the validity of a patent once a federal court has declared it to be invalid." The Court in Blonder-Tongue did not examine mutuality of estoppel "for wholesale approval or rejection." Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, *supra* at 327, 91 S.Ct. at 1442. Since the defendants herein are the same parties and since the plaintiff is in privity with Andrew G. Nelson, Inc., this decision, unlike Blonder-Tongue, does not require an examination of the changing area of the law on the requirement of mutuality of estoppel.

stores" was the central legal issue that was litigated in *Nelson, Inc.*, and is determinative of a legal matter in controversy in this instant suit.

■ The issue of what constitutes "stock in trade of drug stores" for this certificate and these parties and their privies has been litigated, and this issue is not subject to relitigation before this court. The essence of collateral estoppel is to determine issues finally, prevent relitigation of old issues, and conserve parties' and judicial energies. Cognizant of these purposes, we add that nothing further need be said now or in the future concerning what "stock in trade of drug stores" means for this certificate.

■■ North Central raises one final issue, claiming that the Commission should have reopened Andrew G. Nelson's grandfather proceeding for consideration of evidence that had not been brought to the Commission's attention before it originally issued the permit to Andrew G. Nelson on March 13, 1942. The Commission held that the plaintiff failed to prove that the authority granted in the grandfather permit "was not fully responsive to the proof adduced" during the original grandfather proceeding. 117 M.C.C. at 192. It is established that "[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–87, 54 S.Ct. 692, 694, 78 L.Ed. 1260 (1934). We have reviewed the record and conclude that there is a rational basis for the Commission's conclusion that "[t]he pertinent authority granted in the 'grandfather' proceeding was predicated on a showing that Andrew G. Nelson was transporting the stock in trade of drug stores for Walgreen Drug Company and no probative evidence is here tendered which would justify a broader grant of authority than previously made." 117 M.C.C. at 191.

This court's temporary restraining order of May 11, 1973, is dissolved, and judgment is entered in favor of defendant. The Commission's order is sustained, and costs are assessed against plaintiff.