NORTH CENTRAL TRUCK LINES,
INC., a corporation, Petitioner,

v.

The INTERSTATE COMMERCE COM-
MISSION and United States of
America, Respondents.

No. 76–1597.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 25, 1977.

Decided June 6, 1977.

Rehearing Denied June 29, 1977.

Warren H. Sapp, Kansas City, Mo., for petitioner.

Frederick W. Read, III, Atty., I.C.C., Washington, D.C., with whom Mark L. Evans, Gen. Counsel, Charles H. White, Jr., Associate Gen. Counsel, I.C.C., and Robert J. Wiggers, Atty. Dept. of Justice, Washington, D.C., were on the brief, for respondents. Lloyd John Osborn, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for respondent United States.

Before MacKINNON, ROBB and WIL-KEY, Circuit Judges.

Opinion for the court filed by Circuit Judge MacKINNON.

WILKEY, Circuit Judge, dissents.

MacKINNON, Circuit Judge:

North Central Truck Lines (hereafter, North Central) is a common carrier by motor vehicle which holds a certificate of public convenience and necessity authorizing it to transport "stock in trade of drugstores" over irregular routes between points in various midwest states. The certificate was acquired from a predecessor concern, Andrew G. Nelson, Inc.

On two prior occasions the holder of the certificate had been subjected to enforcement proceedings instituted by the Interstate Commerce Commission (hereafter, the Commission).[1] In both of these proceedings the Commission entered cease and desist orders which were affirmed by the United States Supreme Court. In the first case, *Andrew G. Nelson, Inc. v. United States,* 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958), the Court construed the certificate as requiring "that the goods transported be intended for use by a drugstore as part of its stock in trade." 355 U.S. at 559, 78 S.Ct. at 499. This interpretation was applied by the Commission in a subsequent enforcement proceeding, *North Central Truck Lines, Inc.—Investigation,* 117 M.C.C. 180, 190 (1972), and the resulting cease and desist order was affirmed in *North Central Truck Lines, Inc. v. United States,* D.C., 381 F.Supp. 1217, 1220 (three-judge court), *stay denied,* 384 F.Supp. 1188 (W.D.Mo.1974), *aff'd, North Central Truck Lines, Inc. v. United States,* 420 U.S. 901, 95 S.Ct. 820, 42 L.Ed.2d 832 (1975).

Following this latter enforcement proceeding, North Central filed a proposed tariff to become effective on March 1, 1976 containing the following provisions:

*CERTIFICATION:*

All shipments tendered to North Central Truck Lines, Inc., whether in truckload or less than truckload quantity are subject to the following:

The shipper will be required to provide a certified and notarized statement with each bill of lading stating the shipper has *absolute knowledge* the shipment will eventually be sold in a drugstore, a store using "drug" in its trade name, or in the drug department of another store. Said statement will also contain a *guarantee* that if a shipment tendered North Central Truck Lines, Inc. does not eventually sell in a store as described above, and North Central Truck Lines, Inc. is prosecuted by any regulatory body (State or Federal regulatory body) the shipper will assume all expenses caused by such action or any litigation caused by complaints of any other parties.

If the shipper will not or cannot guarantee or certify such shipments it shall not offer or tender any freight to North Central Lines, Inc. nor file complaints with any State or Federal agencies for being refused service to the general public. (Emphasis added).

A division of the Commission with one commissioner dissenting, rejected the tariff because of the above provisions and subsequently denied a petition for reconsideration. We affirm the action of the Commission.

Section 217(a) of the Interstate Commerce Act authorizes the Commission "to reject any tariff filed with it which is not in consonance with this section and with such regulations."[2]

---

1. (1) Andrew G. Nelson, Inc.—Investigation, 63 M.C.C. 407 (1955), *aff'd sub nom. Andrew G. Nelson, Inc. v. United States,* 150 F.Supp. 181 (N.D.Ill.1956) (three-judge court), *aff'd,* 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958); (2) North Central Truck Lines, Inc.—Investigation, 117 M.C.C. 180 (1972), *aff'd, North Central Truck Lines, Inc. v. United States,* 381 F.Supp.

1217 (W.D.Mo.1974) (three-judge court), *aff'd,* 420 U.S. 901, 95 S.Ct. 820, 42 L.Ed.2d 832 (1975).

2. * * * The tariffs required by this section shall be published, filed, and posted in such form and manner, and shall contain such information, as the Commission by regulations shall prescribe; and the Commission

A commission is authorized to reject tariffs for defects of form and substance where the rate or tariff is an obvious nullity as a matter of substantive law. *United Gas Pipe Line Co. v. Mobile Gas Corp.,* 350 U.S. 332, 347, 76 S.Ct. 373, 100 L.Ed. 373 (1956); *Municipal Light Boards v. FPC,* 146 U.S.App.D.C. 294, 298–99, 450 F.2d 1341, 1345–46 (1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972); *W. J. Dillner Transfer Co. v. United States,* 214 F.Supp. 941 (W.D.Pa.1963) (three-judge court). *Cf. Federal Power Commission v. Texaco, Inc.,* 377 U.S. 33, 44, 84 S.Ct. 1105, 12 L.Ed.2d 112 (1964).

In the event that the Commission permitted the proposed tariff to become effective all shippers would be required to provide a "certified and notarized statement" with each bill of lading that the shipper has "*absolute knowledge* the shipment will eventually be sold in a drugstore . . ." etc. (Emphasis added). On its face this is an impractical requirement if a carrier is looking for business. No shipper can foresee with certainty where a distributor might sell his products. Even aspirin might be diverted from a drugstore to a supermarket. The Commission found that few shippers would ever be found who, under the burdens imposed by the other provisions of the tariff would swear to "absolute knowledge" as to where many articles eventually would be sold; and why should they when other shippers do not impose such requirements?

Secondly, comes the identification provision that would require shippers to "guarantee" in writing that if any tendered shipment is not eventually sold in a drugstore, and North Central is prosecuted therefor, the shipper "will assume *all expenses* caused by such action or any litigation caused by complaints of *any* other parties." This would require shippers to pay all re-

sulting legal expenses, fines and damages incurred by North Central in all such instances. This obligation would result even though North Central finally was found not to have been in violation. This attempt by North Central to use the Interstate Commerce Act to shift its liability to shippers and immunize itself from financial responsibility arising out of its own wrongdoing, and alleged wrongdoing, is contrary to the entire spirit of the Act and the Commission acted properly in rejecting it.

The final provision provides that no shipper shall file a complaint with any state or federal agency for being refused carrier services to the general public if it will not or cannot "*guarantee or certify*" that its tendered shipments satisfy the aforementioned requirements. Since this proposed provision would operate before any goods had been accepted by the carrier it would not have the benefit of a contractual base. Lacking this it is impossible to ascertain the theory upon which it could become binding upon any putative shipper. In reality it is nothing more than an unauthorized attempt by the carrier to prevent shippers from exercising their legal rights to complain to regulatory bodies. As such it is in direct contravention of section 304(c) of the Act which authorizes "any person" to complain to the Commission.[3]

The proposed tariff also violates the following Commission regulation:

> (k) *Operating authority.* (1) Tariffs must contain only rates, charges, and related provisions that cover services in strict conformity with each carrier's operating authority. *No provision may be published in tariffs, supplements, or revised pages which results in restricting service to less than the carrier's full operating authority* or which exceed such authority. Tariff publications containing

is authorized to reject any tariff filed with it which is not in consonance with this section and with such regulations. * * *

49 U.S.C. § 317(a) (1970).

**3.** 49 U.S.C. § 304(c) (1970) provides as follows: Upon complaint in writing to the Commission by any person, State board, organiza-

tion, or body politic, or upon its own initiative without complaint, the Commission may investigate whether any motor carrier or broker has failed to comply with any provision of this chapter [§§ 301–327 of this title], or with any requirement established pursuant thereto.

such provisions are subject to rejection or suspension for investigation.

49 C.F.R. 1307.27(k)(1) (1976) (second emphasis added). This regulation authorizes the "rejection" of any tariff which would result in restricting service to less than a carrier's full operating authority. Common carriers have an obligation to accept all shipments submitted to them within their authority and cannot restrict the services they furnish the public to less than the full services authorized by their certificate. When they do so they infringe upon the exclusive power of the Interstate Commerce Commission to determine what the public convenience and necessity requires shall be transported and the terms thereof.

Under its operating certificate North Central is required to determine whether tendered shipments are intended for eventual use by a drugstore as part of its stock in trade. If it is going to operate as a common carrier, North Central must comply with that restriction on its authority. North Central, by its tariff, cannot narrow the potential shippers it will serve.

> Among the principal tests of a common carrier are whether it makes a bona fide holding out to carry for hire for anyone desiring transportation and has the ability to perform such transportation. It is the right of the public to use the facilities of a carrier and to demand service of it, rather than the extent of its business, which determine whether or not it is a common carrier.

1 E. Watkins, Shippers and Carriers, § 5–2, at 547–48 (5th ed. 1962). It cannot impose obstructions in its tariffs that will needlessly discourage shippers from using the transportation services that the Commission's certificate has authorized because it found they were necessary and which the law requires it to furnish to the public. To do so is a clear violation of regulation (k), and, within the meaning of that regulation is not in "strict conformity with [the] carrier's operating authority." Regulation (k), *supra.*

We thus find that the tariff on its face is suffering from the three substantive defects above referred to and violates Regulation (k). Therefore, since the tariff was "not in consonance with [the] . . . section and with [the] . . . regulations," the Commission was authorized[4] to *reject* the tendered tariff. Like the Federal Power Commission in *United Gas Pipe Line Co. v. Mobile Gas Corp.,* 350 U.S. 332, 347, 76 S.Ct. 373, 100 L.Ed. 373 (1956),[5] the Commission here, under its general authority "to make all necessary orders . . . [to] enforce all provisions of . . ."[6] the Act was empowered to issue the instant rejection order. The Commission was not required to suspend and investigate the tariffs,[7] because they are "so patently a nullity as a matter of substantive law, that administrative efficiency and justice are furthered by obviating any docket at the threshold rather than opening a futile docket." *Municipal Light Boards v. FPC, supra,* 450 F.2d at 1346. The order of the Interstate Commerce Commission is therefore affirmed.

*Affirmed.*

WILKEY, Circuit Judge.

I respectfully dissent.

---

**4.** 49 U.S.C. § 317(a), *supra* ; 49 C.F.R. 1307.-27(k)(1).

**5.** There can be no doubt of the authority of the Commission to reject the unauthorized filing under its general powers to issue orders "necessary or appropriate to carry out the provisions of this Act," § 16, and its failure to do so and its order "permitting" the new rates to become effective were in error. 350 U.S. at 347, 76 S.Ct. at 382. The filing in question was a "nullity" because it was unauthorized.

**6.** 49 U.S.C. § 304(a)(6) (1970); Motor Carrier Act of 1935, § 204(a)(6), ch. 498, 49 Stat. 546, provides:

> It shall be the duty of the Commission—
> \* \* \* \* \* \*
> (6) To administer, execute, and enforce all provisions of this chapter, to make all necessary orders in connection therewith, and to prescribe rules, regulations, and procedure for such administration . . . ..

**7.** 49 C.F.R. 1307.27(k)(1).